STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF, v. PIA STAR REALTY CO., INC. *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided December 20, 1971.

*Mr. Louis Krieger* for plaintiff (*Messrs. Lasser and Krieger,* attorneys), special counsel for the New Jersey Department of Transportation (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey).

*Mr. Walter Goldberg* for defendants (*Messrs. Goldberg and Carlin,* attorneys).

SCHWARTZ, J. C. C. (temporarily assigned). The State moves under authority of *N. J. S. A.* 27:7–22 for judgment for the excess ($87,200) deposit by it over a jury award in condemnation, and for interest from January 17, 1969 to date of receipt by plaintiff of such excess. In effect, the proceeding is one to settle the form of the judgment. (*R.* 4:42–1), together with the "hearing" provided for in said statute.

The State on January 1, 1968, pursuant to the statute, deposited $191,600 upon the filing of its declaration of taking. On January 17, 1969 there was a re-appraisal and the State deposited an additional sum of $475,600, making the total deposit $667,200. The owner withdrew these deposits

on January 2, 1968 and February 25, 1969, respectively. The jury verdict on October 7, 1971 was $580,000. It follows that the State was under-deposited from January 1, 1968 to January 17, 1969, and over-deposited from January 17, 1969 to date of verdict. Defendant's admit their liability for $87,200.

The State admits its liability for interest on the difference between the deposit and verdict while under-deposited, but contends that should the court award defendants interest on the difference between the original deposit of $191,600 and the jury award of $580,000, for the period January 2, 1968 to January 17, 1969, the court should also do equity to plaintiff and award it interest on the difference between the total deposit of $667,200 and the jury award of $580,000 for the period commencing January 17, 1969 to the date of payment by defendant. It is further argued that the State shall rely in the main upon the general equity powers of the court, as set forth in *State v. Nordstrom,* 54 *N. J.* 50 (1969); *State, by State Highway Comm'r v. Seaway, Inc.,* 46 *N. J.* 376 (1966), and *N. J. Turnpike Authority v. Bayonne Barrel & Drum Corp.,* 110 *N. J. Super.* 506 (Law Div. 1970), advanced as illustrations of equitable treatment afforded the property owner, and the State concludes with the query, "Should not the State receive the same treatment?"

It is conceded that the statute makes no provision for such interest to the State, but it is urged that "neither does it set forth any prohibition" and "evenhanded and fair administration of justice" requires exercise of such equity power.

Interest and return of an excess deposit are dealt with by the statute as follows:

If the amount of the award as finally determined by the court shall exceed the amount so deposited, the person or persons to whom the award is payable shall be entitled to recover from the department the difference between the amount of the deposit and the amount of the award, with interest at the rate of 6% per annum thereon from the date of the making of the deposit. If the amount of the award shall be less than the amount so deposited, the Clerk of the Superior

Court shall return the difference between the amount of the award and the deposit to the department unless the amount of the deposit or any part thereof shall have theretofore been distributed, in which event the court, upon application of the department and notice to all parties interested in the award and affording them an opportunity to be heard, *shall enter judgment in favor of the department for such difference against the party or parties liable for the return thereof.* [*L.* 1966, *c.* 155, § 1; emphasis added]

The statute clearly entitles the owner to recover the amount of an under-deposit with interest at 6%. The concluding (emphasized) part of the act provides (as to over-deposit) only for the "difference" to be entered as a judgment, with no mention of interest.

In *State, by State Highway Comm'r v. Seaway, Inc., supra,* the court, in referring to *N. J. Highway Authority v. Ellis,* 24 *N. J.* 1, 7 (1957), said:

Ellis thus provides that the State is *constitutionally required* to make an award of interest where there is a lapse of time between the day of actual taking of the property and the date of payment for that taking. This requirement is not based on any equitable principles, nor upon the theory that the owner must be reimbursed for the income he might have obtained had he remained in possession of his property. Rather, the Constitution demands that the condemnee receive interest as a part of his right to just compensation. [at 381; emphasis added]

In directing that the condemnee "shall be entitled to recover" interest for the period that the State is under-deposited the statute conforms to the prior case law and embodies the constitutional requirement of the *right* to interest. The constitutional right does not include the rate or period to be used in computation. These matters depend upon specific statutory provision, or where there is none, then on general equity principles. *N. J. Highway Authority v. Ellis, supra,* at 7. Here the statute fixes the right as well as the rate and period of computation.

The owner is thus entitled to the statutory rate of interest as a matter of right. It is not a matter (as plaintiff argues), that "Should the Court award defendant interest

* * * the Court should also do equity to plaintiff * * *." It is not equity but the statute which directs payment of this interest and, as pointed out, of constitutional dimension and its rationale is that interest to an owner in condemnation is not "interest *eo nomine* but a substitute or means of measuring the value of deprivation of the use of the property," and "interest has also been held to be a measure of severance damage." 3 *Nichols, Eminent Domain* (1965), § 8.63 at 160.

The State, being entitled to the excess deposit, "The court * * * shall enter judgment in favor of the department for such difference" (less offsetting credits to the owners). *N. J. S. A.* 27:7–22.

The remaining question is whether the State is entitled to interest on the excess $87,200 withdrawn by and to the use of the owners. I find no reported decision on this question in this State, nor any construing the act.

The State, conceding that the statute makes no provision for interest to it in these circumstances, argues that "neither does it set forth any prohibition." There are provisions, however, which appear significant clues to the legislative thinking on this question and of some aid in the treatment of the issue. The State relies solely on fairness and equal treatment as the measuring rod in terms of "equity." The statute in question provides that on the filing of the declaration and deposit of the estimated compensation, the State is entitled to exclusive possession, "it being the intent of this provision that the action to fix compensation * * * shall not delay the taking of possession * * *," and, in addition, provides that the owners are entitled to the fund deposited forthwith, on application and order of the Superior Court, "provided that each person shall have filed * * * a consent in writing that, in the event the award in the action should be less than the amount deposited, the court, after * * * notice * * * *and a hearing* * * * may determine the liability, *if any,* for the return of *such difference or any part thereof* and enter judgment therefor." (Emphasis added). It is un-

der this authority that we are here engaged. It is at once noted that the "difference or any part thereof" may be ordered returned following a hearing. A greater amount is not specified. Interest would increase it. It is obvious that the State might be entitled to less than the excess of deposit over verdict, as in this case where it was underdeposited for a period, and it is plain that since the court "may determine the liability, *if any*," the owner's claim could be set off against that of the State. Hence the statute limits the maximum return to the amount of the excess deposited.

While our statute does not specifically provide so, a deposit stops the running of interest. 3 *Nichols, Eminent Domain* (1965), § 8.63 at 160; *National Docks, etc. Ry. Co. v. Penn. R. R., etc., Co*, 54 *N. J. Eq.* 142 (Ch. 1895). Thus, the owner has the option of taking the deposit or leaving it to lie sterile. If he takes it and may be liable for interest, he takes some risk.

There was no statement of purpose attached to the bill creating *N. J. S. A.* 27:7-22. The problems and confusion in this field, including interest, were noted by a Revision Commission, and the aspect presented here is but a new feature which the deposit formula of the act has generated.

The Eminent Domain Revision Commission created by *L.* 1962, *c.* 50 (*R. S.* 1:16-9 *et seq.*) had the duty to study and prepare and reconcile the "overlapping, uncertain, confusing and redundant expressions and clarify and to fix and determine the bases of just compensation with as much uniformity as possible with respect to matters of basic policy." It recognized interest as a subject of "uncertainty and lack of uniformity" (New Jersey, Eminent Domain Revision Commission Report (April 1965), art. IX, p. 39) in connection with an award. The report formulated and recommended the deposit procedure as the consideration for an immediate taking and right to possession, and this was adopted. The Commission further recommended that if "the award be found insufficient, the condemnor shall pay

the deficiency *with interest.*" (Emphasis added). This was adopted. However, the Commission also recommended that "should the amount withdrawn exceed the final award, the excess shall be repaid with interest." (Art. III, p. 18). This was not adopted. The conclusion that the omission was deliberate is inescapable.

Assembly Bill 388, introduced February 3, 1969, also included provision for the repayment of the excess with interest at the rate of 6%. While the bill passed in the Assembly it did not in the Senate. Failure of passage further supports the conclusion.

The State refers to 3 *Nichols, Eminent Domain* (1965), § 26.61 at 391, stating, "Where the amount deposited and withdrawn by the condemnee is in excess of the award, the condemnor is entitled to repayment of the excess with interest thereon," and citing *Arkansas State Highway Commission v. Rich,* 235 *Ark.* 858, 362 *S. W.* 2d 429, 431 (1962). The Supreme Court of Arkansas ruled that the State was entitled to interest on the difference between the jury award and the deposit because after the declaration of taking and deposit of $69,500 the *landowners* prevailed on *their* motion to increase the deposit to $544,000. The Commission immediately complied, and on the following day the landowners withdrew the entire sum. The ultimate verdict was $325,000. The court emphasized that where condemnor makes the deposit, as in *City of Atlanta v. Lunsford,* 105 *Ga.* App. 247, 124 *S. E.* 2d 493 (Ct. App. 1962), under a code procedure based on a "three assessor method," and the money is withdrawn, it is to be distinguished from the situation before it where the owner sought the greater deposit, and it was not a situation similar to the one in Georgia where "the condemnor would be able to force the landowner to accept an involuntary loan." The court said that the owners "took the initiative in the matter, demanding that the amount of the deposit be increased and adducing proof to sustain their claim," and such does not bear any "resemblance to an involuntary loan." In *City of Atlanta v. Luns-*

*ford, supra,* it was also pointed out (at 495) that while provision for payment of interest by the condemnee on the excess had not yet been tested as to constitutionality, "There is room, we think, for grave doubt that the provision will stand a constitutional test."

In *State Through Dept. of Highways v. Busch,* 220 *So.* 2d 513, 515 (La. App. 1969), the sole question, as here, was whether the condemnee should pay interest on the difference between the amount deposited and withdrawn and the ultimate verdict. The applicable statute provided that "If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess." The Louisiana court, too, considered the question *"res nova"* and said that "If we were to adopt the 'sauce for the goose sauce for the gander' approach, urged by plaintiff we would have to allow interest from that date. However the cooks in the legislative kitchen have, in our judgment, refused to apply an evenhanded approach to this problem." The court held that the Legislature by clear implication intended interest only to the property owner and not the State.

Whether our appellate courts will place such interpretation on our statute is still an open question. It is my view that here the matter rests on equitable criteria and is not foreclosed by the statute. In any case, *Busch* does not support the State's claim.

3 *Nichols, Eminent Domain* (1965), § 8.63[4], at 189, also considers:

Interest when there is an appeal.

It has been held that when an owner collects the award after an appeal has been taken, and he is awarded a less amount on the appeal, the condemnor is entitled to recover interest upon the difference, but in this, too, the practice is not uniform. Certainly, the owner in such case is not entitled to interest for the period of the delay occasioned by such appeal. If the owner is awarded a larger sum he is entitled to interest on the increased sum. It has been held, however, in such case that he is entitled to interest only on the amount of the increase.

and notes the following cases:

In *Watson v. Milwaukee M. & N. R. Co., 57 Wis. 332, 15 N. W.* 468 (Sup. Ct. 1833), the owner withdrew a deposit following the commissioner's award. The condemnor appealed and the verdict was for a reduced amount. The court ordered return of the difference with interest thereon. The owners appealed, and as to interest the Supreme Court merely said that "Having had the use of the money of the company, to which they were not entitled, it would seem to be clearly *equitable* to charge appellants with interest on the same for the time they so used it." [at 476; emphasis added]. The word *equitable* is the only clue to the court's reasoning. And in *Spies v. Chicago & M. Elec. R. Co., 148 Wis.* 35, 133 *N. W.* 1110 (Sup. Ct. 1912), the commissioner's award was appealed and resulted in lower amount. The owners had withdrawn the deposit before verdict. The court, following verdict, ordered the excess returned with interest and costs. The owners on appeal therefrom contended that since the condemnor did not appeal the commissioner's award there was no right to a return of the difference, with no mention whatever of the specific item of interest. The court rejected the owners' argument and affirmed the judgment of the trial court, again with no mention of interest.

In the more recent cases, such as *Davidson v. County of Harris, 454 S. W.* 2d 830 (Tex. Civ. App. 1970), the owners appealed a jury award which was less than that of the commissioner. The judgment following jury award ordered appellant to pay the excess withdrawn, with interest at the rate of 6% from date of deposit. On appeal it was held that interest is limited from the date of the judgment and not the date of deposit. The court said that the condemnor is given the option of depositing and taking the property or delaying the taking until judgment becomes final. It said a property owner has no similar right of election but must abide by the election of the condemnor. (Our statute like-

wise provides that the condemnor may file a declaration upon institution of condemnation. It, too, is not mandatory).

In *St. Louis, K. & N. W. R. Co. v. Knapp, Stout and Co. Company*, 160 *Mo.* 396, 61 *S W*. 300 (Sup. Ct. 1901), a jury verdict of $21,500 followed a deposit of $44,000 as per the commissioner's report; the owners appealed and the condemnor cross-appealed from the refusal to allow interest on the excess. It was held that

> Interest in this State is allowed by statute. No statute allows interest under circumstances like those presented here. The land of defendant was seized in invitum. The law required the money to be put up for its protection while its land was put in possession of plaintiff. Extraordinary power was conferred on plaintiff, and, while it has been compelled to lie out of the use of its money pending the settlement of the amount it should pay, *it is simply the price which the statute requires, and no default is traceable to defendant*. There never was a time when it was in default until the final judgment was rendered requiring it to refund, and then plaintiff appealed. We are clear that plaintiff is not entitled to interest as claimed * * * [at 305; emphasis added]

In noting "no default traceable to defendant" in the last-mentioned opinion, I conclude that equity was a consideration.

In the matter of *N. Y. El. R. Co.*, 44 *Hunter* 117, 8 *N. Y. St. Rep.* 431 (Sup. Ct. 1887) it was held interest is not recoverable by the condemnor

■ These references do not support the equal treatment or equitable thesis. The act and its history leave no doubt that interest on such excess was not favored as a matter of right. The more likely supposition is that the Legislature preferred that the matter rest in the courts on an *ad hoc* basis since many variables are foreseeable. The Legislature must have recognized the matters known by those familiar with the subject, and the Commission report underscores this. The owner's position is a finality; it is concluded — the value is frozen as of a fixed date. Opportunity for appreciation of the investment is ended. This burden to him is a corresponding benefit to the State, *State v. Nordstrom,*

54 *N. J.* 50, 54 (1969) ; and fixed interest could compound the burden.

Here it was four years from date of declaration to verdict. No fault is laid to the owner, nor does the record disclose any default on his part with the exception of two matters to be discussed hereafter. Possibility of income during this period was foreclosed. Must the condemnee let the money lie sterile to avoid the risk of paying interest? In the real property market during this period appreciation of the investment was fairly certain, and it is common knowledge that 6% interest (payable on an under-deposit not available in lieu of some portion of the property) is not a fair yardstick to measure return on investment in land.

█ Interest is an exaction for past-due obligations and in essence is in the nature of a penalty. *Burlington Cty. v. Martin,* 128 *N. J. L.* 203 (Sup. Ct. 1942), aff'd 129 *N. J. L.* 92 (E. & A. 1942). Interest, where allowed, is in contemplation of law — damages for the illegal detention of a legitimate claim or indebtedness. *Fidelity Mutual Life Ins. Co. v. Wilkes-Barre and Hazelton R. Co.,* 98 *N. J. L.* 507 (E. & A. 1913).

In *Consolidated Police, etc., Pension Fund Comm'n v. Passaic,* 23 *N. J.* 645 (1957), the city challenged the validity of legislation consolidating all pension funds and placing the administration thereof in a state commission. The city refused to transfer funds, held by it under the prior plan, until the constitutionality of the state commission plan was adjudicated. The question was whether interest was required to be paid by the city during this period of litigation. The court traced the history of interest from the Mosaic law and later ecclesiastical law; stated it was not a common law inheritance, and said it was rejected by the courts on the philosophy, from the time of Aristotle, that money was inherently nonproductive and but a medium of exchange (at 652). The court further stated (at 654) that sometime later, regulation of interest in England became

essentially a statutory process, and "in this country interest is generally of statutory origin." While

> "Interest is allowed either as damages for the wrongful retention of money or personal property, or in accord with a contract for its payment. * * * The law imposes a duty to pay interest from the time payment of principal is due, or from the time of its wrongful detention. Such payment is in its essence damages for failure to pay the principal at the time agreed upon. But the law neither imposes nor implies an obligation to pay interest from the moment of the creation of a debt, or of a deposit. Such a payment is in its essence a consideration for the use of money. That obligation must arise from special agreement of the parties." [at 653–654; citations omitted]

The Court held that the state commission was not entitled to interest from the city and said:

> Thus, we are not met with a statutory provision for interest, nor with a contract for interest, R. S. 31:1–1, N. J. S. A., as amended by L. 1953, c. 150, and there was not at the time a Commission regulation or known usage or practice for the payment of interest on such assessments; and *considerations of equity and fairness* counsel against the allowance of interest in such circumstances, more especially since the delay in payments had reference to the period of transition and the resolution of constitutional issues raised in good faith. [at 655; *emphasis added*]

The above quotation is apt here. Do not "considerations of equity and fairness counsel against the allowance of interest in such circumstances" in this case?

> However, the tendency of the courts has been to break away from hard and fast rules and to charge and allow interest in accordance with principles of equity in order to accomplish justice in each particular case. [*Jardine Estates, Inc. v. Donna Brook Corp.*, 42 N. J. Super. 332 at 340–341. (App. Div. 1956)].

In *Brown v. Home Dev. Co.*, 129 N. J. Eq. 172 (Ch. 1941), it is said:

> "Unless a case can be found which is a conclusive authority establishing a precedent, the safest way for a court of law or equity

is to decide all questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing." [at 177; citations omitted]

■ The State raises two other specific faults to be laid to the owner, said to favor its claim. The State once more re-appraised, sometime prior to July 30, 1970, for a total of $479,500. This followed discovery of its error in calculating the value of 33 acres instead of 25 acres actually in contemplation. The maps delineated the area being taken without noting the specific acreage. On July 30, 1970 a letter was written to counsel for the owner demanding return of the amount over-estimated and withdrawn. The letter merely stated a new estimate, with no mention of lesser acreage. It is agreed that the owner refused to comply but did suggest that plaintiff's counsel should apply to the court for relief. This was never done. The record shows a taking of 33+ acres up to March 26, 1971, when an amended complaint was filed describing the taking as 25+ acres (this was the second amended complaint). These facts are uncontroverted. Plaintiff contends that intransigent refusal to return the over-deposit on this new appraisal requires that interest be paid on the $87,200. I cannot subscribe to this.

If the difference of $186,700 (the over-deposit said to result from the error in acreage) had been returned on the demand, the State would now be responsible for interest on the difference between $186,700 and $87,200. The verdict does not support the re-appraisal on March 3, 1970, and the owner's experts valued the taking of 25+ acres greatly in excess of the verdict. There is no showing that such value was not made in good faith.

The amount withdrawn is to be reckoned against the verdict now, and not the State's third re-appraisal. The owners were not, as it turns out, wrongfully holding the State's money. The withdrawal to the extent of $87,200 only is due from the date of this judgment.

In addition, the State alleged in a letter to me that the owner's "dilatory tactics caused the long delay" herein. This falls short of proof, even though this is but a summary proceeding. Moreover, a fair appraisal of the record of appraisals and re-appraisals, as noted here, must place some fault on plaintiff for the delay. I cannot speculate in fixing some portion of the period of time involved here as delay caused by one or the other of the parties, even if I credit the State's allegation of "dilatory tactics."

That this may result in compensation beyond the constitutional requirement does not render it vulnerable on the issue here since our Supreme Court recently, in *Jersey City Redevelopment Agency v. Kugler*, 58 *N. J.* 374 (1971), said:

The provision of the Constitution for the payment of just compensation is primarily a restriction on the power of the Legislature for the benefit of the property owner. As we have said, it is not a specific measuring rule and there is a margin of discretion for courts and the Legislature in devising rules to insure such compensation. And it seems to be well recognized that while the lawmakers cannot adopt a measure which will detract from that compensation, they may prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution. *Daniels v. State Road Department*, 170 *So.* 2d 846 (Fla. Ct. 1964) ; *State v. Reid*, 204 *Ind.* 631, 185 *N. E.* 449, 451 (1933) ; 3 *Nichols, supra*, § 8.9, p. 255 ; 27 *Am. Jur.* 2d, *supra*, § 266, p. 53. The judicial power is a limitation upon the authority of the Legislature to fix a measure of damages detrimental to the owner's right to just compensation as constitutionally guaranteed. See *State ex rel. Milchem Inc. v. Third Judicial Dist. Ct.*, 84 *Nev.* 541, 445 *P.* 2d 148, 152 (1968) ; *Keystone Associates v. Moerdler*, 19 *N. Y.* 2d 78, 278 *N. Y. S.* 2d 185, 224 *N. E.* 2d 700, 703–704 (1966) ; 3 *Nichols, supra*, § 8.9, p. 255. [at 384]

■ Accordingly, judgment is to be entered in favor of defendant and against plaintiff in the amount of $580,000, and in favor of the plaintiff against defendant in the amount of $62,925 ($87,200 less $24,275 representing interest due defendant while the State was under-deposited). An additional credit shall be given plaintiff for interest at 6% on $87,200 for a period of two weeks caused by an adjournment of this motion granted to defendant.