**ORONO–VEAZIE WATER DISTRICT**

v.

**PENOBSCOT COUNTY WATER COMPANY.**

Supreme Judicial Court of Maine.

Dec. 2, 1975.

Bernstein, Shur, Sawyer & Nelson by Gregory A. Tselikis, Barnett I. Shur, Portland, for plaintiff.

Verrill Dana Philbrick Putnam & Williamson by Roger A. Putnam, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

This case is before the Law Court on report upon an agreed statement of facts pursuant to Rule 72(b), M.R.Civ.P.

On September 23, 1971 (Private and Special Laws, 1971, c. 67) the Legislature created the Orono-Veazie Water District (the District) by constituting the inhabitants and territory within the Towns of Orono and Veazie in the County of Penobscot a public municipal corporation, subject to acceptance and approval by a majority vote of the legal voters within the two

towns. The Act expressly voided a prior incorporation of the District under chapter 50 of the Private and Special Laws of Maine, 1969. The referendum on the proposal was held in October, 1971 and the District was approved by a majority of the votes cast.

Pursuant to section 11 of chapter 67, the District is "authorized and empowered to acquire by purchase or by the exercise of the right of eminent domain . . . the entire plant, property, franchises, rights and privileges of the Penobscot County Water Company located in or serving the Towns of Orono and Veazie, except its cash assets, amounts receivable, and its land and office building on Forest Avenue in Orono, including all lands, waters, water rights, dams, structures, reservoirs, pipes, machinery, fixtures, hydrants, tools and all apparatus and appliances owned by said company, . . . ." Section 12 of the Act provides that, in case the trustees of the District fail to agree with the Penobscot County Water Company (the Company) upon the terms of purchase of the Company's property involved in the statutory transfer on or before May 1, 1972, the District, through its trustees, is authorized to take the stated property by filing a petition in the clerk's office of the Superior Court of the County of Penobscot on or before November 1, 1972.

Following the acceptance of the proposed District at the referendum election held in Orono and Veazie in October, 1971, a Board of Trustees was appointed to manage this newly created public municipal corporation as required by section 8 of the Act. With the services of retained counsel, the trustees made overtures to the Company for the purpose of reaching an agreement of purchase. Letters exchanged between counsel for the parties proved unproductive and on May 1, 1972, the critical date on which the District's right to exercise the power of eminent domain ripened, no agreement had been concluded.

It was only on October 27, 1972 that the District, through its trustees, filed its petition to condemn the defendant Company's property.[1] The defendant responded with a motion to dismiss the District's petition and for summary judgment in its favor. Several reasons were alleged in support of the motion to dismiss: 1) the Act (Chapter 67 of the Private and Special Laws, 1971) is unconstitutional for failure to provide just compensation;[2] 2) the District did not negotiate in good faith prior to May 1, 1972 as required by the Act; and 3) mandatory statutory requirements in the conduct of the referendum special election were not complied with. The motion for summary judgment is grounded on the alleged failure of the District to negotiate in good faith.[3]

The defendant Company's claim of unconstitutionality of the Act stems from the language of section 12 of chapter 67, which provides as follows:

"The first day of May, 1972, shall be the date as of which the valuation aforesaid [of the property] shall be fixed, from which date interest on said award shall run and the net balance of all rents and profits accruing thereafter shall belong to and be paid to said water district

---

1. Under the Act, the District's right to proceed by way of eminent domain would have expired on November 1, 1972.

2. Article I, Section 21 of the Constitution of Maine:
 "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Amendment V to the Constitution of the United States, applicable to the States through the Fourteenth Amendment:

"* * * ; nor shall private property be taken for public use, without just compensation."

3. Since we are deciding that the provisions of chapter 67 of the Private and Special Laws, 1971 are unconstitutional for failure to provide "just compensation" within the legal intendment of Article I, Section 21 of the Constitution of Maine, we find it unnecessary to treat the non-constitutional issues raised by the defendant's motions.

as provided for in the final decree of court."

■ When legislation comes under judicial scrutiny for determination of its constitutional validity, we must have in mind that *all* acts of the Legislature, including special and private laws, are presumed to be constitutional, that this presumption is one of great strength and that the burden of showing constitutional infringement rests on the party who claims that the legislative enactment is unconstitutional. *In re Spring Valley Development*, 1973, Me., 300 A.2d 736, 746; *Look v. State*, 1970, Me., 267 A.2d 907, 909, 910.

■ Before legislation may be declared in violation of the Constitution, that fact must be established to such a degree of certainty as to leave no room for reasonable doubt. *York Harbor Village Corporation v. Libby*, 1928, 126 Me. 537, 549, 140 A. 382.

■ But, the presumption of constitutionality is not absolute and it must give way when the statutory language shows a clear and undoubted legislative intent running counter to some constitutional inhibition. See *Ace Tire Co., Inc. v. Municipal Officers of Waterville*, 1973, Me., 302 A.2d 90, 101.

■ The Court is duty bound to declare invalid an act which violates an express mandate of the Constitution, even if the Legislature presumably found the act expedient or otherwise in the public interest. See *In re Milo Water Company*, 1930, 128 Me. 531, 149 A. 299; *Randall v. Patch*, 1919, 118 Me. 303, 306, 108 A. 97.

■ As stated in *Maine Pharmaceutical Association v. Board of Commissioners*, 1968, Me., 245 A.2d 271, by Chief Justice Williamson:

"If, however, the act of the Legislature falls clearly beyond the limits of constitutional authority the Court must not hesitate to declare such action void.

In so doing we have no concern with the policy of the Legislature or the reasons underlying its decision. It is the Constitution, and the Constitution alone, against which we measure the action of the Legislature." Id. at 272. ·

■ Furthermore, we must bear in mind that statutes purporting to give authority to exercise the sovereign power of eminent domain are in derogation of private rights and are subject to the rule of strict construction against the donee of the power. *In re Bangor Hydro-Electric Co.*, 1974, Me., 314 A.2d 800; *Clark v. Coburn*, 1911, 108 Me. 26, 78 A. 1107, Ann. Cas. 1913B, 167.

The date of taking is critical in eminent domain proceedings. In *Williams v. State Highway Commission*, 1961, 157 Me. 324, 172 A.2d 625, 626, it was described as that day on which "[a]ll incidents of proprietorship such as entry, use, occupation, rents and profits . . . inured at once to the condemner" and on which the condemner became entitled forthwith to institute against the condemnees a possessory action to secure the property condemned. From the condemnees' viewpoint, the date of taking in *Williams* was said to be the day they had become divested of the title to their property and had accordingly become competent to petition for a determination of the damages and to achieve remuneration under the constitution and the statute. Thus, in *Williams*, where the statute provided that "the recording of the said description [of the property] shall vest the fee of the described property in the state," the Court held the date of recording to be the date of taking, *notwithstanding the former · owners continued to enjoy uninterrupted possession and use of the real estate expropriated and all income therefrom from June 20, 1958, the date of recording, to June 2, 1960, the day of the jury award of damages.*

It appears from *Williams* that, although the State would have been entitled to the rents and profits of the condemned proper-

ty from the express statutory divestment-of-title date, if it had brought a possessory action forthwith, nevertheless, since it had permitted the condemnees to remain in possession, all it could recover from the former owners would be damages for use and occupation as tenants at sufferance. The condemnees' enjoyment of the rents and profits through the use of the land while tenants at the sufferance of the State was no bar to their recovery of interest on the value of the property condemned from the date of the statutory divestment of title which was considered the date of taking.

The reference Act, like the statute in *Williams*, in specific terms, states the time when title to the condemned property passes from the Company to the District, but, contrary to the legislative design in *Williams* where the vesting of title was fixed at an early date in the condemnation process, such as the time of recording of the description of the property taken, the instant Act sets the right to possession and the vesting of title at the end of the judicial proceedings establishing the taking. Indeed, the Act expressly provides that

> "[o]n payment or tender by said district of the amount so determined and the performance of all the other terms and conditions so imposed by said court, *possession of and title to the entire plant, property and franchises of said company* used and usable in supplying water in the Towns of Orono and Veazie *shall become vested in said water district.*" (Emphasis ours)

Thus, if *Williams* controls, then, the date of May 1, 1972 could not be considered as the legal date of taking.

On the other hand, the Legislature focused on the May 1, 1972 date as the day certain from which all statutory preliminary steps, required to be taken prior to the formal taking or right to possession and vesting of title, could thereafter be executed. Indeed, under section 12 the District may file its petition to establish the

taking, only after May 1, 1972 if, by that time, no agreement has been reached by the parties upon the terms of purchase. Under the statute, a justice of the Supreme Judicial Court, after due notice to the Company, is directed to appoint 3 disinterested appraisers for the purpose of fixing a valuation of the Company's property and, upon motion, to fix among other things a time at which the Company shall file for the inspection of the District the following information:

> "First, schedule showing the names, residences and water service of all of its customers *on the first day of May, 1972,* with the rate charged therefor; second, copies of all contracts in force *on said first day of May, 1972;* third, an itemized statement of the gross income earned during its last complete fiscal year and *up to said first day of May, 1972,* and all operating expenses and fixed charges, paid or incurred during such period and properly chargeable thereto; fourth, a memorandum of all real estate, water rights, or interest therein, owned or controlled *on said first day of May, 1972,* with such brief description thereof, as will reasonably identify the same; fifth, brief descriptions, specifications and plans of all reservoirs,

> \* \* \* \* \* \*

> and sixth, an itemized list of all tools, apparatus, appliances and supplies used or usable in supplying water *on said first day of May, 1972.*

> \* \* \* \* \* \*

> The appraisers so appointed shall, after notice and hearing, fix the valuation of said plant, property and franchises at what they are fairly and equitably worth so that said water company shall receive just compensation for all and the same. *The first day of May, 1972, shall be the date as of which the valuation aforesaid shall be fixed, from which date interest on said award shall run and the net balance of all rents and profits accruing*

*thereafter shall belong to and be paid to said water district as provided for in the final decree of court."* (All emphasis added)

 We recognize that the Constitution does not require the payment of just compensation prior to the taking of private property for public uses and further agree the mode and manner by which the individual whose property is taken shall obtain compensation is to be determined by the Legislature (*Riche v. Bar Harbor Water Company*, 1883, 75 Me. 91, 99); nevertheless, the legislatively ordained proceedings for the determination of "just compensation" must be such that, as the end result of the exercise of the power of eminent domain, the owner will be receiving the equivalent monetary worth for the value of the property taken from the time of taking.

In *Foss v. Maine Turnpike Authority*, 1973, Me., 309 A.2d 339, at 344, this Court indicated that the term "taking" in constitutional terminology does not necessarily involve an infringement upon the actual possession of the owner:

"In order to constitute a constitutional 'taking,' it is not necessary that the plaintiff actually be removed from his property or deprived of its possession, but merely that *an interest in the property, or in its use and enjoyment, be seriously impaired."* (Emphasis provided).

In *State v. Johnson*, 1970, Me., 265 A.2d 711, this Court approved the definition of a "taking" in more positive terms:

"Broadly speaking, deprivation of property contrary to constitutional guaranty occurs 'if it deprives an owner of one of its essential attributes, destroys its value, restricts or interrupts its common necessary, or profitable use, ham-

pers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it and thereby seriously impairs its value.'" Id. at 715, quoting 16 Am.Jur.2d Constitutional Law § 367.

 It is from the time the law secures "certain and well defined rights" in the condemner that there takes place an expropriation or a "taking" in the constitutional sense. See *Jordan v. Woodward*, 1855, 40 Me. 317, 324.

 It is clear that as of May 1, 1972 the District had the authority, under the instant special legislation, to exercise the right to take the Company's property in eminent domain proceedings. But, the mere existence of an optional right to take property by eminent domain, which the prospective condemner may discontinue or abandon at any time prior to its ultimate conclusion,[4] is not, in and of itself, a taking, even though it may have an adverse effect on the value of the property. The resulting depreciation ensuing from such an event is an incident of ownership rather than a "taking" in the constitutional sense.

Here, the District had until November 1, 1972 to initiate the formal proceedings in eminent domain, and, even after their initiation, the ownership of the property was not affected in any legally significant way until, as the statute expressly directs, the title became vested in the District on the payment or tender by the District of the amount of the award and the performance of all terms and conditions imposed by the court under statutory directive. Hence, the mere fact that the District had, as of May 1, 1972, the statutory right to condemn the Company's property, such did not amount to a taking in the constitutional sense. See, *23 Tracts of Land v. United*

---

4. "Until the condemning corporation *has actually taken the property*, as in *Pennsylvania R. Co. v. Reichert*, 58 Md. 261, or until title has become vested in it by payment or tender of the award, the rights of the parties are so far ambulatory that the condemning cor-

poration may abandon either the entire project or its right to take the particular property at the award." *Petroli v. Mayor and City Council of Baltimore*, 1934, 166 Md. 431, 171 A. 45, 47. Accord: *In re Certain Land*, etc., 1950, 364 Pa. 71, 70 A.2d 847.

*States,* 1949, 6 Cir., 177 F.2d 967; *Town of Swampscott v. Remis,* 1966, 350 Mass. 523, 215 N.E.2d 777.

Under the instant statute, the District was not entitled to possession of the Company's property, nor did title vest, until the ascertained amount of compensatory damages provided under the statutory formula was paid or tendered by the District to the Company. The payment or tender of the damages to the owner of the land and the vesting of title in the condemner under this statute are to be contemporaneous. We hold, as in *Williams,* that the date of payment or tender of payment is the date of taking under the Act, notwithstanding that it fixes the date of valuation of the Company's property as of May 1, 1972.

██ The provision of the Constitution for the payment of just compensation in the taking of private property for public use is primarily a restriction on the power of the Legislature for the benefit of the property owner. The Constitution guarantees just compensation for whatever right in property is taken from the owner. It is well established, however, that the Legislature may, consistently with the constitutional guarantee, designate, for the purpose of assessing compensation, a specific date within the framework of the legislatively ordained condemnation proceedings which is prior to the date of the court judgment by which the owner's title or interest in the property passes to the condemner. *City of Los Angeles v. Tower,* 1949, 90 Cal.App.2d 869, 204 P.2d 395.

██ Where the taking, as in the instant case, is effected by statutory judicial proceedings which necessarily involve some delay and the compensation must be assessed before the taking becomes effective, it is somewhat impractical to assess the damages as of the date of the taking. See 3 Nichols on Eminent Domain (3d Ed.), § 8.5[2], page 35. Furthermore, valuation dates in eminent domain statutes may be fixed at a time different from the date of

taking to avoid problems of fluctuations in value which may take place before the condemnation proceedings are completed. *State ex rel. State Highway Commission v. Grenko,* 1969, 80 N.M. 691, 460 P.2d 56, 60.

██ Where a statute provides the valuation of the condemned property to be assessed as of a date prior to the date of taking and then permits a *protracted period of time* for the prosecution of the proceedings to establish the taking, during which time the value of the property may rise or fall, such a statute would be unconstitutional for conflicting with the constitutional concept of "just compensation." 3 Nichols on Eminent Domain (3d Ed.), § 8.5[2], p. 38. See also *State v. Griggs,* 1960, 89 Ariz. 70, 358 P.2d 174.

██ Section 12 of chapter 67, by permitting the District's initial step in the judicial process, i. e. the filing of its petition to establish the taking, to be taken on or before November 1, 1972, some six months following the failure of the parties to reach agreement on the terms of purchase by May 1, 1972, superimposes, upon an otherwise inevitable period of litigation, a pointless delay which in aggregate effect, by reason of the freezing of values too far in advance, may unnecessarily cause the owner to suffer in an inflationary market. No reason appears for such statutory lull and permissive inactivity in the taking process, where a period of no more than 30 days would seem sufficient to permit the District to file its petition.

Such arbitrary possible additional delay between the date as of which the value of the property to be condemned must be assessed and the date of taking, in view of the prolonged period of time inherent in the statutory judicial proceeding itself, is violative of the constitutional guarantee of "just compensation."

"It is not what has been done, or ordinarily would be done, under a statute, but what might be done under it, that determines whether it infringes upon the

constitutional right of the citizen. The constitution guards against the chances of infringement." *Bennett v. Davis*, 1897, 90 Me. 102, 105, 37 A. 864, 865; *Sleeper, Applt.*, 1952, 147 Me. 302, 308, 87 A.2d 115.

The reference unreasonable built-in delay in the commencement of the judicial proceedings to establish the taking so extends the period between the date of valuation and the ultimate date of taking ꞓ to create an impermissible potential for deprivation of a substantial part of the just compensation to which the condemnee is entitled under the Constitution.

 Furthermore, section 12 of chapter 67 violates Article I, Section 21 of the Constitution of Maine in that it provides that the net balance of all rents and profits accruing after May 1, 1972 and earned by the Company "shall belong to and be paid to said water district as provided for in the final decree of court." Since the date of taking under the Act is the date of payment or tender by the District of the amount determined by the Court to be payable under the legislative formula, such being the time when under the statute the right to possession of, and title to, the property vests in the District, the statutory transfer of the Company's earned rents and profits from May 1, 1972 to the date of the court's decree can only be viewed as a retroactive condemnation of said rents and profits.

In *Curtis v. Maine State Highway Commission*, 1964, 160 Me. 262, 266, 203 A.2d 451, 453, we said:

> "The owner of the land taken by the process of eminent domain is entitled to an exact equivalent for the injury; he is to be made whole insofar as money can compensate. His right is to receive no more or no less."

Section 12 of chapter 67 clearly allots the rents and profits earned by the Company from May 1, 1972 to the District and

the adjustments to be made by the Justice in his determination of the final award as directed by the statute has to do only with physical additions to or deductions from the plant and property from the May 1, 1972 date, as well as with all receipts and expenditures properly had or incurred by the company during that period, subject to the overriding legislative mandate that the net balance of all rents and profits accruing after May 1, 1972 "shall belong to and be paid to said water district as provided for in the final decree of court."

The District contends, however, that the statutory requirement that interest be paid to the Water Company from the first day of May, 1972 on the ultimate award of just compensation, exclusive of the net balance of all rents and profits accruing thereafter which, under the legislative formula, belong to and must be paid to the District in any case, is a constitutional compensatory quid pro quo for the injury occasioned by the delayed statutory procedural taking-process and the loss of the net balance of the Company's earned rents and profits subsequent to May 1, 1972. We disagree.

 Interest is the compensation fixed by agreement, or allowed by law, for the use or detention of money. At ancient common law, the taking of any kind of interest was unlawful and criminal. But, as stated in *Inhabitants of Town of Norridgewock v. Inhabitants of Town of Hebron*, 1957, 152 Me. 280, 283, 128 A.2d 215, 217, the principle upon which the concept of interest is based has come to be generally recognized to the effect that

> "if a debt ought to be paid at a particular time, and is not then paid, through the default of the debtor, compensation in damages, equal to the value of money, which is the legal interest upon it, shall be paid during such time as the party is in default."

 The owner of land taken under the power of eminent domain is entitled to interest on his award of damages from the

time of the taking. *Bangor & Piscataquis R. R. Co. v. McComb,* 1872, 60 Me. 290. Such award of interest is an exaction in the nature of a penalty and constitutes additional damages for the illegal detention of a legitimate indebtedness. *State, Commissioner of Transp. v. Pia Star Realty Co.,* 1971, 118 N.J.Super. 55, 285 A.2d 581, 586.

This Court in *Williams,* supra, so ruled, that "[i]nterest was an element of or was incidental to plaintiffs' damages," and that they were entitled to the same from the date of taking, notwithstanding the plaintiffs had for nearly two years uninterrupted enjoyment of possession and use of the property expropriated and all rents and profits therefrom. Thus, this Court, in *Williams,* looked with disfavor upon a judicial setoff of rents and profits acquired by the condemnees through their retention of the property expropriated after the date of taking against the interest to which they are entitled under the law for the delayed payment of the monetary value of the property taken.

■ An owner who is actually deprived of the use and occupancy of his land before he is paid or tendered the constitutional "just compensation" in the amount of its value is entitled to damages for his loss occasioned by the delay, and the allowance of interest, by statute or judicial decree, under such circumstances is appropriate in order to make adequate the compensation for the taking. See *Williams,* supra; *United States v. Rogers,* 1921, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L. Ed. 566; *Jacobs v. United States,* 1933, 290 U.S. 13, 16, 54 S.Ct. 26, 28, 78 L.Ed. 142.

■ The interest with which we are here involved is the statutory interest on the award from the date of valuation of the property, i. e. May 1, 1972, to the time of payment or tender thereof, the latter date being the date of taking under the statute. Absent a statutory provision requiring the payment of interest, the owner of the land is not entitled to interest for any period prior to the date of taking, including the time during which the condemnation proceedings may be pending, and such an omission in the statutory scheme of the eminent domain process does not offend the constitutional guarantees of "just compensation." See *Trustees of New York & Brooklyn Bridge v. Clark,* 1893, 137 N.Y. 95, 32 N.E. 1054; *Norcross v. City of Cambridge,* 1896, 166 Mass. 508, 44 N.E. 615; *Town of Swampscott v. Remis,* 1966, 350 Mass. 523, 215 N.E.2d 777; *Bauman v. Ross,* 1897, 167 U.S. 548, 598, 17 S. Ct. 966, 985, 42 L.Ed. 270; *Oregon Short Line R. Co. v. Jones,* 1905, 29 Utah 147, 80 P. 732; *Kirby Lumber Corporation v. State of Louisiana,* 1961, 5 Cir., 293 F.2d 82.

■ While the Legislators are restricted by the Constitution in their formulation of the rule of damages respecting "just compensation" and cannot constitutionally fix the measuring process in such a way as to deprive the owner of that "exact equivalent for the injury" which the Constitution guarantees, they may prescribe a method of assessment more favorable to the owner than that which would satisfy the minimum requirement of either the Federal or State Constitutions. *Jersey City Redevelopment Agency v. Kugler,* 1971, 58 N.J. 374, 277 A.2d 873, 878; *Town of Swampscott v. Remis,* supra; *Daniels v. State Road Department,* 1964, Fla., 170 So.2d 846, 853.

The allowance of interest from May 1, 1972, the date as of which "[t]he appraisers . . . shall . . . fix the valuation of said plant, property and franchises at what they are fairly and equitably worth so that said water company shall receive just compensation for all and the same," was undoubtedly prompted by the fact that from that date, for all practical purposes, the Company's business and assets were frozen and could not be sold, that any increase in value affecting the Company's properties between the valuation date and the ultimate judicial award would be lost to the Company, and that such device might have the wholesome ef-

fect of stimulating the District to prompt action, or at least to the making of a meaningful offer of settlement. See *State v. Nordstrom*, 1969, 54 N.J. 50, 253 A.2d 163, 167.

We recognize that, perhaps, the more equitable rule in eminent domain proceedings might be—where the owner is allowed interest notwithstanding his retention of possession of the property to be expropriated, he should not be entitled both to interest and to rents and profits, but should have to account for the value of the use of the property as an offset against the interest allowable. See *State v. Coney*, 1962, Haw., 372 P.2d 348.

In the instant case, a Justice of the Supreme Judicial Court under the Act is assigned the task of appointing the 3 disinterested appraisers and causing said appraisers and the trustees of the District to be furnished by the Company all necessary data relevant to the establishment of a fair and equitable valuation of the Company's property as of May 1, 1972. The Act further provides:

"Before said plant, property and franchises are transferred in accordance with such final decree and before payment therefor, as hereinbefore provided, such justice shall, upon motion of either party, after notice and hearing, take account of (a) all additions to and deductions from the plant and property, as of the first day of May, 1972, adjusting the valuation to reflect such changes as may occur from the first day of May, 1972, to the date of the final decree, and (b) take account of all receipts and expenditures properly had or incurred by the company in respect of the territory comprising said district belonging to this period, from and after said first day of May, 1972, and all net rents and profits accruing thereafter, and shall order (a) the adjusted value of the plant and property and (b) the net balance of the rents and profits, if any, to be added to or deducted from the amount to be paid under such final decree, as the ·case may be."

Under the legislative formula the Justice's ultimate order must provide for the payment of the value amount at which the assessors have appraised the Company's property as of May 1, 1972, as adjusted by the Justice for physical additions to and deductions from the plant and property made during the period from May 1, 1972 to the date of the final decree, together with interest on said adjusted value. It must further order paid to the District the net balance of all rents and profits accruing during the reference period or otherwise order the same to be deducted from the value amount to be paid by the District to the Company. Nowhere in the Act are the net rents and profits specifically to be offset as such against the interest to be paid on the value amount of the property.

Since the Act must be construed in favor of the condemnee and against the party expropriating the property, in the absence of a specific provision that net rents and profits or the value of possession to the owner retaining possession are to be offset against the interest allowable under the statute, we cannot infer any intent on the part of the Legislature to compel such setoff. If the Legislature had so intended, it would seem that it would have done so in appropriate language. See *People v. Podrat*, 1961, 194 Cal.App.2d 696, 15 Cal.Rptr. 343. This result is consistent with the holding in *Williams v. State Highway Commission*, supra.

That aspect of the Act which awards to the District the net rents and profits earned by the Company from May 1, 1972 to the time of the ultimate decree is an unconstitutional confiscation of property without just compensation.

The entry must be

Petition of Orono-Veazie Water District dismissed.

All Justices concurring.

WEATHERBEE, J., sat at argument, but did not participate in the decision in the case.