**Constance L. RAYMOND**

v.

**Laurier T. RAYMOND, Jr.**

Supreme Judicial Court of Maine.

Argued June 14, 1982.

Decided July 6, 1982.

Kurtz & Myers, P. A., Theodore H. Kurtz (orally), South Paris, for plaintiff.

Marshall, Raymond, Beliveau, Dionne & Bonneau, Judith W. Andrucki (orally), Lewiston, for defendant.

Before McKUSICK, C. J., NICHOLS, CARTER and WATHEN, JJ., and DUFRESNE, A. R. J.

WATHEN, Justice.

The parties in this case were divorced in January, 1980 by a decree entered in Superior Court, Androscoggin County. The decree, which incorporates an agreement of the parties and subsequent revisions in chambers, provided:

> "support ... in the amount of $1,350. per month commencing Jan. 1, 1980. Said payment includes $200. towards the support of minor child, and $1,150 as alimony toward the support of Constance L. Raymond. Said periodic payments shall continue for five years from January 1, 1980, but shall terminate on the death of Constance Raymond, should that first occur."

In the matter now before the Court the defendant moved to suspend the decree for alimony on the grounds that plaintiff had remarried. The motion was heard and denied, and defendant appeals that decision. We deny the appeal. The issue raised is whether plaintiff's remarriage requires that defendant's obligation to pay alimony be terminated.

In 1945 in *Bubar v. Plant*, 141 Me. 407, 410, 44 A.2d 732, this Court discussed the impact of the remarriage of the receiving spouse on the obligation to pay alimony:

We think that the correct rule is that the remarriage of a divorced wife does not of itself terminate her right to alimony, but that it does make out a *prima facie* case which requires the court to end it, in the absence of proof of some extraordinary circumstance justifying its continuance. It is a question in which public policy plays an important part; and it is against public policy in the ordinary case for one man to be supporting the wife of another who has himself assumed the legal obligation for her support.

Defendant argues that *Bubar* required the trial court to suspend alimony in this case. We disagree.

■ Preliminarily, we point out that public policy concerning marriage and divorce has not remained static since 1945. The advent of no fault divorce, the effective recognition of equality of the sexes, and recent changes in the federal income tax law concerning alimony have combined to make any categorical statements of public policy concerning these matters ill-advised. In 1979, against the backdrop of ever-changing societal values concerning divorce, the Maine legislature recognized the need for flexibility in addressing the issue of alimony and amended 19 M.R.S.A. § 721 (1981) to provide:

> This section shall not limit the court, by full or partial agreement of the parties or otherwise, from awarding alimony for a limited period, from awarding alimony which may not be increased regardless of subsequent events or conditions, or otherwise limiting or conditioning the alimony in any manner on terms that the court deems just.

Although *Bubar's* policy of termination of alimony upon remarriage may retain vitality in some instances,[1] the statute makes clear that under appropriate circumstances (one of which may be the agreement of the parties) the court may deem it just to decree that alimony continue past remarriage.

Such a considered determination by the court is the statutory equivalent of an extraordinary circumstance, within the meaning of *Bubar*, justifying the continuance of alimony.

■ Defendant argues that the decree in this case cannot be construed as a considered judgment requiring the continuation of alimony past remarriage. The record demonstrates, however, that the decree of alimony for a fixed duration was determined by the court with the aid of the agreement of the parties. It is also abundantly clear that the implications of the Internal Revenue Code were not ignored in fashioning the agreement and the resulting decree. In light of the agreement and tax considerations the trial justice could readily have found it to be just to continue alimony past remarriage. Moreover, such a construction is the only plausible one given the language of the decree: "Said periodic payments shall continue for five years from January 1, 1980, but shall terminate on the death of Constance Raymond, should that first occur." The decree reflected the agreement for a fixed term of alimony and expressly provided one condition for termination of the alimony obligation. That condition, therefore, must be regarded as the only operative one:

> Where the agreement made no mention of the wife's remarriage and nothing was said concerning the duration of the payments, our courts have held, in the absence of any intention to the contrary that the payments should terminate upon the wife's remarriage.

> \*　　\*　　\*　　\*　　\*　　\*

> The separation agreement was drawn and reviewed by counsel and it would seem that when they took the trouble to limit the duration of the payments to two years, they would have expressly provided for any further limitation in the duration of the payments such as the remar-

---

1. The changes which have occurred in the area of divorce law may undercut the policy announced in *Bubar* and *Mitchell v. Mitchell*, Me., 418 A.2d 1140 (1980) which relied upon it. Because we rely upon a statutory exception which was enacted subsequent to the decree in *Mitchell*, it is not necessary to determine the extent of any modifications in policy mandated by socio-legal events since 1945.

riage of the wife, had the parties so intended.

*Sprentall v. Smallridge,* 75 Misc.2d 405, 347 N.Y.S.2d 659, 660-61 (1973).

 Where the parties have agreed that alimony shall continue past remarriage of the receiving spouse, and the trial court, having considered the circumstances surrounding such an agreement, has deemed it just and incorporated it in its decree, remarriage of the receiving spouse does not require termination of the alimony obligation. We therefore deny the appeal.

The entry is:

Judgment affirmed.

All concurring.