Constance L. RAYMOND

v.

Laurier T. RAYMOND, Jr.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1984.

Decided April 24, 1984.

Kurtz & Myers, Theodore H. Kurtz (orally), South Paris, for plaintiff.

Sayer & Golden, Michael Sayer (orally), Lisbon Falls, for defendant.

Before McKUSICK, C.J., NICHOLS, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

On this appeal, his second in the post-judgment divorce litigation, *see Raymond v. Raymond*, 447 A.2d 70 (Me.1982) [*Raymond I*], the husband asks us to reverse an order of the Superior Court (Androscoggin County) that awarded the wife counsel fees incurred by her subsequent to the divorce judgment and interest on overdue alimony under that judgment. The husband contends 1) that by the doctrine of "law of the case" the Superior Court was precluded from awarding the wife counsel fees by its own earlier orders denying her request for fees, and 2) that the Superior Court lacked authority to award interest on the due, but unpaid, alimony installments ordered by the divorce judgment. We deny the appeal.

### I. *Counsel Fees*

The husband's contention that the Superior Court was barred from awarding the wife counsel fees by its own previous orders rests upon his characterization of the procedural history of this post-judgment litigation. After reviewing the record in its entirety, we find no prior judgments or orders precluding the Superior Court from making the award of counsel fees that is here appealed. The record supports the conclusion of the motion justice that, although the Superior Court had entered several orders pertaining to the issue of counsel fees, the court had retained jurisdiction to make a final decision on the matter at the conclusion of the post-judgment proceedings.

The parties were divorced by a judgment entered in Superior Court on January 4, 1980. After the wife remarried, the husband discontinued paying alimony in May of 1981 and filed a motion to suspend the judgment for alimony. The wife filed two motions in response. The first was a motion to enforce the divorce judgment, which requested the court to order the husband to pay the alimony arrearages with interest, plus counsel fees incurred by the wife in prosecuting the motion. The second motion sought award of expenses, including

counsel fees, necessary to defend the husband's motion to suspend.

The wife's two motions were heard first on July 13, 1981. The motion justice denied the motion to enforce the divorce judgment but made that denial "subject to said motion being raised, if necessary, subsequent to the court's decision on defendant's motion to suspend, now pending." He also denied the motion requesting counsel fees for the defense of the husband's motion to suspend the judgment for alimony, stating, "The [wife] has sufficient funds to retain counsel in the pending motions at this time."

The husband's motion to suspend was heard by a second Superior Court justice, who presided over the remainder of the post-judgment proceedings, and was denied on February 3, 1982. In his order denying the motion to suspend, the second justice granted the wife leave to renew her motion to enforce the divorce judgment, stating:

> The issue of attorney's fees, raised by Plaintiff at the hearing on this motion, is not properly before the Court at this time since the [wife] did not cross-petition for attorney's fees on this motion.

The husband appealed the denial of his motion to suspend to this court, and the wife renewed her motion to enforce. That motion was continued by the Superior Court pending appeal, the justice ruling:

> If appropriate, a hearing concerning attorney fees will be held after a decision is rendered on [the husband's] appeal.

After we denied his appeal in *Raymond I* on June 14, 1982, the husband paid the principal amount of the alimony installment that had previously come due under the January 4, 1980 judgment. The husband reached no settlement with the wife, however, as to counsel fees or interest. On May 27, 1983, the Superior Court denied the husband's motion to dismiss the wife's motion to enforce, finding that it had reserved the question of counsel fees until the merits were "finally resolved." The

court awarded the wife counsel fees in the amount of $12,920.08 and interest in the amount of $1,750.00.[1]

At the outset, we note that although there were a number of different motions simultaneously and consecutively pending before the Superior Court, these post-judgment proceedings are brought in a single action and have the purpose of determining the husband's continuing obligation to honor the divorce judgment after the wife's remarriage. The husband's argument that the Superior Court was precluded by the law of the case from awarding counsel fees at the conclusion of the action is based primarily on his interpretation of the first justice's orders of July 13, 1981 ("1981 orders"), denying the wife's motion to enforce the divorce judgment and denying her motion for award of expenses and the second justice's order of February 3, 1982 ("1982 order"), denying the husband's motion to suspend.

The "law of the case" is a phrase applied to two slightly different principles:

■ More frequently this doctrine is an articulation of the wise policy that a judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction.

. . . .

■ Occasionally the same phrase "law of the case" is applied to a slightly different principle; namely, that, absent a showing of essentially different facts, the decision by an appellate court on a given issue is to be followed in the trial court once the case is remanded, and that the decision by an appellate court controls in subsequent proceedings in the same court.

*Blance v. Alley,* 404 A.2d 587, 589 (Me. 1979). *See Sprague v. Washburn,* 447 A.2d 784, 787 (Me.1982); *Grant v. City of Saco,* 436 A.2d 403, 405 (Me.1981). Both of these principles are potentially applicable to the facts of this appeal. The first princi-

---

1. The husband does not contest the amount of the interest awarded, but does contest the authority of the Superior Court to award any interest at all.

ple is implicated by the 1981 orders, since they were not issued by the second justice who made the 1982 order and who subsequently awarded the wife counsel fees. The second principle potentially governs the preclusive effect of the 1982 order to the extent that the issues addressed in that order were resolved by our affirmance on appeal in *Raymond I.*

A. *The July 13, 1981, orders*

Turning first to the 1981 orders, the husband argues that the Superior Court's conditional denial of the motion to enforce limited the wife's right to renew the motion to narrow circumstances that were not present at the time of the award of counsel fees. The husband argues that denial of the motion "subject to said motion being raised, if necessary, subsequent to the Court's decision on defendant's motion to suspend," limited the wife's right to renew the motion to enforce to the situation where the husband continued to refuse to pay alimony even after his motion to suspend was denied. Since the husband paid the arrearage after the denial of his motion to suspend, the argument continues, the wife could not renew her request for counsel fees contained in the original motion to enforce. The husband also argues that the denial of the motion for award of expenses necessary to defend the husband's motion to suspend precluded the wife from subsequently requesting fees incurred in the defense of that motion.

■ While the meaning of the 1981 orders is not entirely clear, we conclude that the language of both orders, fairly read, fails to support the husband's position. With respect to the denial of the motion to enforce, we agree that in using the words "if necessary" the court limited the right of the wife to renew the motion to the situation where the husband failed to comply with the demands of that motion after an unfavorable disposition of his motion to suspend. We see no reason, how-

ever, why the triggering noncompliance should be limited to failure to pay the alimony arrearage, when in fact the motion to enforce from the start demanded counsel fees and interest as well as the principal amount of the back alimony. With respect to the denial of the motion for award of expenses, we note that the motion sought expenses prospectively and was denied by the court on the ground that the wife had "sufficient funds to retain counsel in the pending motions *at this time.*" (Emphasis added) The denial of a prospective request for counsel fees made at the beginning of divorce litigation will not preclude the court from considering award of fees at the conclusion of the proceedings. *Compare* 19 M.R.S.A. § 722(2) (1981) *with* 19 M.R.S.A. § 722(3) (1981). *See* M.R.Civ.P. 80(c).

■ However, we need not decide which characterization of the 1981 orders was ultimately correct; it is sufficient for purposes of deciding the appeal that the meaning of the orders was ambiguous. While the doctrine of the law of the case is based on important policy considerations,[2] it is not applied as rigidly as the doctrine of *res judicata.* *Grant v. City of Saco,* 436 A.2d at 405. The doctrine does not "serve as a complete bar to reconsideration of an issue when the prior ruling *is provisional or lacks clarity ....*" *Grant v. City of Saco,* 436 A.2d at 405 (emphasis added). *See also Sprague v. Washburn,* 447 A.2d at 787 (a litigant "may not, except for the most compelling reasons, reopen a question of law that another judge has already *clearly* decided in the same action") (emphasis added). Given the ambiguity and preliminary nature of the first justice's 1981 orders, it was incumbent on the second justice to place a reasonable interpretation upon those orders in construing their meaning. We cannot say that the second justice's conclusion that those orders did not finally

---

2. "[T]he principle of the 'law of the case,' discourages judge-shopping, promotes orderly conduct of litigation, and serves the interest of finality and intracourt comity." *Sprague v. Washburn,* 447 A.2d 784, 787 (Me.1982).

decide the issue of counsel fees was unreasonable.

### B. *The February 3, 1982, order*

■ In his 1982 order denying the husband's motion to suspend the judgment for alimony, the second justice refused the wife's request for counsel fees, finding the issue was "not properly before the Court *at this time* since the [wife] did not cross-petition for attorney's fees on this motion." (Emphasis added) The refusal of the request for fees was contained in a footnote to the part of the order granting the wife leave to renew her motion to enforce. The clear implication was therefore that the court was reserving the question of counsel fees for disposition under the motion to enforce, in which the wife had specifically requested fees. In any event, such was the reasonable interpretation that the second justice later placed on his own order.[3] Authority of the court to construe and clarify its own judgments and orders is beyond question. *See Bowley v. Bowley,* 440 A.2d 332, 333 (Me.1982); *Randlett v. Randlett,* 401 A.2d 1008, 1010 (Me.1979); *Boothbay Harbor Condominium v. Whitten,* 387 A.2d 1117, 1120 (Me.1978).

■ The husband makes two arguments as to why our affirmance of the second justice's denial of the motion to suspend nevertheless precluded a subsequent award of counsel fees incurred in connection with that motion. The husband first argues that because the wife failed to cross-appeal the denial of her request for fees incurred in connection with defense of the motion to suspend, our affirmance of the denial of the motion precluded a subsequent award of fees. This argument misconceives the doctrine of the law of the case. It is true that the law of the case requires that, absent a showing of essentially different facts, the decision by this

court on a given issue is to be followed in the trial court once the case is remanded. *Blance v. Alley,* 404 A.2d at 589. *See* 1B *Moore's Federal Practice* ¶ 0404[1], at 119, ¶ 0404[4.–3], at 131 (1983). Here, however, the issue of counsel fees was neither raised on appeal nor considered in our opinion in *Raymond I.* Where the appellate court does not address a particular issue, it does not establish the law of the case on that issue. *See Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979); 1B *Moore's Federal Practice* ¶ 0.404[4.–3], at 131; 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4478, at 793 (1981). The Superior Court's earlier determination as to such issues has the same preclusive effect in proceedings after remand only to the extent that determination would have had, if no appeal had been taken. Therefore, notwithstanding our opinion on the appeal, the Superior Court could reasonably construe its prior denial of the motion to suspend as reserving the question of the wife's attorney's fees, both for the defense against the husband's motion to suspend and for prosecution of her motion to enforce, until disposition of the latter motion. *See Bowley v. Bowley,* 440 A.2d at 333.

■ The husband next argues that because this court does not entertain appeals from nonfinal judgments, *see Sylvester v. Sylvester,* 445 A.2d 674 (Me.1982), our consideration of the husband's appeal of the denial of the motion to suspend in *Raymond I* rendered that order a final one, and our affirmance without a remand deprived the Superior Court of jurisdiction to entertain further proceedings in the case. This argument sets the final judgment rule on its head. It is true that this court will dismiss an appeal of a post-judgment di-

---

3. The second justice consistently maintained this position after the denial of the motion to suspend. In his order continuing the renewed motion to enforce pending appeal of the order denying the motion to suspend, the second justice stated:

If appropriate, a hearing concerning attorney fees will be held after a decision is rendered on [the husband's] appeal.

vorce motion where the Superior Court has not yet decided the issue of counsel fees. *Id.* However, where this court fails to recognize that the Superior Court has reserved the issue of fees and therefore through oversight accepts a premature appeal, as apparently we did in *Raymond I,* our consideration of the appeal will not transform the Superior Court's order into a final judgment contrary to its express terms. The mistake of this court will not later deprive the Superior Court of continued jurisdiction to consider the question of counsel fees, which it had reserved.

Thus, the Superior Court properly determined that it was not precluded by the 1981 orders or the 1982 order from awarding the wife counsel fees.

■ We must address one final issue with respect to the award of counsel fees. When it became apparent that, at the hearing on the motion to suspend, the wife's chief attorney would have to testify as to agreements between the parties leading to the original divorce judgment, a second attorney was specially retained to represent the wife in that hearing. On appeal, the husband challenges the amount of the fees awarded to this second attorney. The Superior Court justice had before him testimony of the wife's chief attorney as to the services rendered by the special counsel, the reasons for retaining him, and the fact the wife had already paid his bill, which was itself put in evidence. The justice, who also had observed the performance of the special counsel in the hearing for which he had been engaged, cannot be said to have committed any abuse of discretion in setting the fees. *See Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980).

### II. *Post-Judgment Interest on Unpaid Alimony*

The January 4, 1980, divorce judgment provides:

It is further ordered that LAURIER T. RAYMOND, JR. pay to CONSTANCE L. RAYMOND ... One Thousand one hundred fifty and 00/100 dollars ($1,150.00 [per month] as alimony toward the support of CONSTANCE L. RAYMOND. Said periodic payments shall continue for five (5) years from January 1, 1980, but shall terminate on the death of CONSTANCE RAYMOND, should that first occur.... It is further ORDERED that the amount of alimony for CONSTANCE L. RAYMOND'S separate support and maintenance shall not be increased or decreased.

From May 1, 1981, until we affirmed the denial of his motion to suspend in July of 1982, *see Raymond I,* the husband failed to make the $1,150.00 monthly alimony payments as they came due under the judgment. In its May 27, 1983, order, the Superior Court awarded the wife interest on the overdue alimony payments, holding that

the interest statute which provides for post-judgment interest on sums due but not paid applies to the delinquent payments in the case. 14 M.R.S.A. § 1602.

On appeal the husband does not contest the amount of post-judgment interest awarded,[4] but does argue that the Superior Court lacked any authority at all to award post-judgment interest on the installments commencing on their respective due dates.

■ The Superior Court's authority to award the wife interest on the withheld alimony payments must exist, if at all, by virtue of an enabling statute. *See Batchelder v. Tweedie,* 294 A.2d 443 (Me.1972); *Cary v. Whitney,* 50 Me. 337, 338 (1863); *Kendall v. Lewiston Water Power Co.,* 36 Me. 19, 22 (1853). The version of 14 M.R.S.A. § 1602 in effect at the time the *Raymond* divorce action was commenced, provided in pertinent part:

In all civil actions ... [f]rom and after the date of entry of an order for judgment, including the period of pendency of an appeal, interest shall be allowed at the rate of 10% per year.

---

**4.** The parties stipulated that if the Superior Court had authority to award post-judgment interest, the amount of such interest on the overdue alimony installments was $1,750.

14 M.R.S.A. § 1602 (1980).[5] The applicability of section 1602 to the case at bar turns on whether a divorce case is a "civil action" and whether a judgment of divorce, including its orders for the payment of money, is an "order for judgment" within the meaning of that statute. We are convinced that the statute does apply by its plain terms and therefore affirm the Superior Court's award of post-judgment interest.

Post-judgment interest in "all civil actions" was first provided by a complete revision of section 1602 in 1969. *See* P.L. 1969, ch. 397, § 1 (repealing and replacing 14 M.R.S.A. § 1602). The meaning of the terms "judgment" and "civil actions" as used in the 1969 amendment must be assessed in reference to the common meaning of those terms at the time of the 1969 amendment was enacted. *See Town of Arundel v. Swain*, 374 A.2d 317, 320 (Me. 1977) (statutory terms are to be construed according to their "natural import in common and approved usage"); *see also State v. Snow*, 383 A.2d 1385, 1388 (Me.1978). The reference point for the meaning of both "civil action" and "judgment" was in 1969, as it is today, the Maine Rules of Civil Procedure. Rule 2 as originally promulgated to be effective December 1, 1959, and as it still appears, provides:

> There shall be one form of action to be known as "civil action."

Since December 1, 1959, Rule 81(a) has provided:

> A civil action under these rules is appropriate whether the suit is cognizable at law or in equity and irrespective of any statutory provision as to the form of action.

Rule 80, dealing explicitly with divorce actions, has from the beginning acknowledged the civil nature of divorce cases.[6] It provides, as it has since its promulgation:

> These Rules of Civil Procedure shall apply to actions for divorce, except as otherwise provided in this rule.

Rule 80 contains no language exempting divorce proceedings from the pronouncements of Rules 2 and 81(a) that only a single form of action, known as a "civil action," survives the 1959 adoption of the modern rules of procedure.

With respect to the term "judgment," Rule 54(a) provides:

> "Judgment" as used in these rules includes a decree and any order from which an appeal lies.

This language plainly encompasses judgments for divorce. Rule 80 itself refers to the term "judgment" in connection with the disposition of divorce proceedings.

Thus, at the time of enactment of the 1969 revision of section 1602, the terms "civil action" and "judgment" had acquired clearly defined meanings by which "civil action" encompassed a divorce proceeding and "judgment," an alimony decree. The legislature's awareness of the nomenclature of the rules is plainly evidenced by its repeated efforts to modernize statutes on the books to conform to the language of the rules. In 1959 and again in 1961, major

---

5. At the time of the entry of the judgment in this action on January 4, 1980, 14 M.R.S.A. § 1602 (1980) provided in full:

> In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest will be suspended for the duration of the continuance. From and after the date of entry of an order for judgment, including the period of the pendency of an appeal, interest shall be allowed at the rate of 10% per year.

Subsequent amendments have increased the rate of post-judgment interest and have made other changes not relevant to the issue of the application of the comprehensive post-judgment interest statute to divorce judgments. *See* P.L. 1979, ch. 655; P.L.1981, ch. 162; P.L.1983, ch. 427 (repeal and replacement).

6. As Professor Field wrote in his Reporter's Notes (Dec. 1, 1959) to M.R.Civ.P. 80, "[a]n action for divorce or annulment is a suit of a civil nature and so within the coverage of these rules ⋅...." 2 Field, McKusick & Wroth, *Maine Civil Practice* 268 (2d ed. 1970).

legislation was enacted repealing all statutory references to obsolete forms of action, pleadings, and other terminology, and replacing them with language consistent with the single form of "civil action" created by the Maine Rules of Civil Procedure. *See* P.L.1959, ch. 317; P.L.1961, ch. 317. Both the 1959 act and the 1961 act made changes in the statutes pertaining to divorce so as to bring those statutes into conformity with the then new civil rules. *See* P.L. 1959, ch. 317, §§ 297–301; P.L.1961, ch. 317, §§ 553–557. *See also* "Memorandum to the Judiciary Committee Prepared by Richard H. Field" reproduced in Field & McKusick, *Maine Civil Practice* 652–72 (1st ed. 1959).

It was against this statutory and rule-making background that in 1969 the legislature provided for the first time for post-judgment interest in "all civil actions." [7] The Superior Court's interpretation of section 1602 is the correct one. The *Raymond* divorce judgment, including its alimony provision, was a judgment entered in a civil action, and the husband withheld payments due under that judgment at his peril. Section 1602 makes no exceptions to the rule that post-judgment interest must be paid in any civil action,[8] and we can divine no policy considerations that would have led the legislature to treat an alimony obligor under a court order any differently than any other judgment debtor. We are here concerned with a money judgment that calls for installment payments as alimony. A divorce judgment equally well might call for one spouse to pay a lump sum to the other as, for example, a payment in lieu of alimony or one to carry out a division of marital property. By the unrestricted language of section 1602, as well as by any reasoned principle, either a lump sum or installment money judgment, including one entered in connection with dissolving a marriage, should carry post-judgment interest.

 We cannot read the legislature's enactment in 1979 of the Alimony and Support Enforcement Act, 19 M.R.S.A. § 771 *et seq.* (1981), as a repeal by implication of the preexisting right of a judgment creditor on a money judgment in a divorce action to enforce it by execution and other existing means, with post-judgment interest being awarded as a matter of course. Note, in this connection, that ever since the enactment of P.L.1959, ch. 317, § 298, a part of the omnibus bill revising all the Maine statutes to conform to the then new Rules of Civil Procedure, use of attachment of real and personal property or on trustee process has been authorized in divorce actions. *See* 19 M.R.S.A. § 692 (1981). The Alimony and Support Enforcement Act, which applies to a wide variety of orders

---

7. Given that statutory and rulemaking background, we reject the argument that by using the term "civil actions" the legislature meant to exclude divorce actions because they are statutorily created, *see Wood v. Wood,* 407 A.2d 282, 285–86 (Me.1979), and are ecclesiastical in origin, *see Preston v. Reed,* 141 Me. 386, 392, 44 A.2d 685, 687 (1945). By adopting the term "civil action" that by then had a well-established, comprehensive meaning, the 1969 legislature brooked no exception to the new statutory provision governing post-judgment interest. If the court were to reach another conclusion, it would be moving back toward the old forms of action, under which each type of proceeding had its own set of rules. There are some special rules applicable to divorce actions, but they are limited to those circumstances expressly set forth in M.R.Civ.P. 80 or the statutes.

8. Under the present version of the statute the award of post-judgment interest is no longer mandatory:

> On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section shall be fully or partially waived.

14 M.R.S.A. § 1602-A (Supp.1983–1984). If the present post-judgment interest statute had been applicable at the time Mr. Raymond withheld alimony payments in a good faith reliance upon *Bubar v. Plant,* 141 Me. 407, 44 A.2d 732 (1945), the trial judge might have been induced to waive all or part of the post-judgment interest during the pendency of his first appeal to this court. That reliance, however, has no relevance under section 1602 in the form in effect in 1980, which gave a judgment creditor the unqualified right to post-judgment interest regardless of a good faith (but unsuccessful) appeal from a money judgment by the judgment debtor.

for the payment of alimony or support and "for payment of related costs and counsel fees," *id.*, § 771, contemplates that the payee will get a second judgment and thereafter can enforce that new judgment by a variety of means. *See id.*, § 774. The remedies of the 1979 act are cumulative, rather than substitutional, to those previously available by statute and rule.

In other jurisdictions, it is the nearly universal rule that a general statute providing interest on money judgments applies to alimony payments, whether in lump sum or installments, after they have become due. *See, e.g., In re Marriage of Hoffee*, 60 Cal.App.3d 337, 131 Cal.Rptr. 637 (1976); *Strand v. Despain*, 79 Idaho 304, 316 P.2d 262 (1957); *Rubisoff v. Rubisoff*, 242 Miss. 225, 133 So.2d 534 (1961); *Scott v. Scott*, 19 Utah 2d 267, 430 P.2d 580 (1967); *Roberts v. Roberts*, 69 Wash.2d 863, 420 P.2d 864 (1966). *See also* 24 Am. Jur.2d *Divorce and Separation* § 763 (1983).[9] To hold otherwise would allow the obligor to profit by a deliberate disregard of the court's judgment. It would be contrary to public policy to erect such an obvious disincentive to a divorced party's timely discharge of his decretal obligation to his former spouse. The Superior Court properly awarded interest on the unpaid alimony that from time to time became overdue by the terms of the January 4, 1980, judgment.

### III.

The wife has requested this court to award her counsel fees and expenses on the present appeal. We have long ago declared that appropriate procedure requires this request to be addressed to the Superior Court by motion on remand. *See Prue v. Prue*, 420 A.2d 257, 260 (Me.1980); *Strater v. Strater*, 159 Me. 508, 520–22, 196 A.2d 94, 100–01 (1963).

The entry is:

Judgment affirmed.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

NICHOLS and GLASSMAN, JJ., concurring.

DUFRESNE, Active Retired Justice, with whom WATHEN, Justice, joins, concurring in part and dissenting in part.

I concur with the Court's opinion, except, however, that I disagree with that portion of the opinion identified as part II wherein the Court rejects the defendant's argument that the Superior Court lacked authority to award interest on unpaid alimony installments from the time said installments became due under the terms of the divorce judgment. It appears to me that the Court is falling into error in deciding, as did the Superior Court, that the plaintiff wife is entitled to interest on the alimony arrearages which have been fully paid by the husband and accepted by the wife. For the reasons now to be discussed, I must respectfully dissent from the Court's opinion in respect to the plaintiff's claim of interest.

It is conceded that the parties in this case were divorced in January, 1980, in the Superior Court, Androscoggin County, by divorce judgment which provided among other things for the payment of $1,150 per month as alimony toward the support of Constance L. Raymond, the plaintiff wife. Upon the wife's remarriage, the defendant husband, on the authority of *Bubar v. Plant*, 141 Me. 407, 44 A.2d 732 (1945), discontinued the monthly alimony payments on the ground that, as stated in *Bubar*, the remarriage of a divorced wife makes out a prima facie case for the termination of alimony rights, absent proof of some extraordinary circumstance justifying

---

**9.** Any concerns about difficulties in computing interest on installment payments due under a divorce judgment are no more serious than exist in regard to any money judgment involving installment payments. Those concerns have not prevented other states from adopting the same broadly applicable post-judgment interest provision that we conclude the Maine legislature enacted in 1969. See also the present provision for waiver. *See* n. 8 above.

its continuance. At the same time, the defendant sought court approval of his noncompliance with the divorce decree by motion in the Superior Court to suspend the divorce decree respecting the payment of alimony on account of his former wife's remarriage. On appeal from an adverse decision thereon, this Court ruled in *Raymond v. Raymond*, 447 A.2d 70 (Me.1982), that the "extraordinary circumstance" justifying the continuance of alimony referred to in *Bubar* had been met in this case, where the trial court had found the separation agreement of the parties, providing, as it did, for the payment of alimony for a stated period of five years without express limitation in the duration of the payments upon remarriage of the wife, to be just under all the circumstances surrounding the agreement, this Court pointing out, in support of its position, the great change in public policy from the time of *Bubar* in 1945 to the present day with the advent of no fault divorce, the effective recognition of equality of the sexes, and the recent federal income tax regulations respecting alimony as they affect the payer and the receiver. There is no evidence in this record that the defendant husband acted in any manner other than in good faith in relying on *Bubar* and not perceiving the extent of the change in public policy since 1945 and the consequences thereof. Shortly after this Court's mandate in *Raymond* received in the Superior Court on July 21, 1982, the defendant husband paid and the plaintiff wife accepted the outstanding alimony arrearage which had accumulated pending this Court's decision of the issue whether the remarriage of the plaintiff wife terminated the right to alimony under the divorce decree. We note at this time that the divorce decree itself did not expressly provide for interest on delayed payments of alimony installments, and that both the Superior Court and the intended

opinion of this Court justify the allowance of interest on the respective overdue installments from the time each became due under the divorce decree upon 14 M.R.S.A. § 1602. In this, there is error.[1]

### 1. *Interest*

Interest is the compensation fixed by agreement, or allowed by law, for the use or detention of money. *Orono-Veazie Water District v. Penobscot County Water Co.*, 348 A.2d 249, 257 (Me.1975). Absent an express contract to pay interest, the rationale underlying such awards of interest for failure to pay a legitimate debt at a particular time stems from the principle that it is only just for a defaulting debtor that he be penalized for withholding the payment of a just debt through the exaction of damages, in addition to damages for the debt itself, equal to the value of the moneys retained, which is the legal interest thereon. *Id.* at 257–258. By ancient common law, it was not only unlawful, but criminal, to take any kind of interest. *Inhabitants of Town of Norridgewock v. Inhabitants of Town of Hebron*, 152 Me. 280, 283, 128 A.2d 215, 217 (1957). Hence, the allowance of interest in circumstances other than where agreements to pay the same were involved have depended in Maine upon enabling statutory provisions. *See Kendall v. Lewiston Water Power Co.*, 36 Me. 19 (1853); *Cary v. Whitney*, 50 Me. 337 (1863); *Hervey v. Bangs*, 53 Me. 514 (1866); *Batchelder v. Tweedie*, 294 A.2d 443, 444 (Me.1972). Interest on judgments, and the period for computation of such interest, recoverable in actions for damages to person or property is not of the substance of the right of action but exclusively an incident attached thereto by legislative fiat after such right has been adjudicated. *See Foster v. Quigley*, 94 R.I. 217, 179 A.2d 494, 495 (1962). There are a few

---

1. Even though the defendant husband claims that the court had no authority to award interest against him on the overdue alimony installments accumulated during the pendency of the appeal to the Law Court, he did agree with the plaintiff wife by way of stipulation in the Superior Court that, if she was legally entitled to interest on the arrearage, the amount thereof should be $1,750.00. The parties have not disclosed what rate of interest was applied, whether post-judgment or prejudgment rate.

exceptions, such as the recovery of interest prior to statute specifically legislating thereon in the case of legacies remaining unpaid at the expiration of one year from the death of the testator, to be computed from that anniversary date (an import from the civil law); *see Nickels v. Nichols,* 118 Me. 21, 23, 105 A. 386 (1919); also, the recovery of interest on awards of damages in eminent domain proceedings from the time of the taking in order to carry out the constitutional guarantees of "just compensation." *Orono-Veazie Water District, supra,* at 258.

### 2. *Statutory history*

Thus, at the very beginning of statehood, recovery of interest in the courts of Maine was strictly controlled by statutory law in all civil actions for debt or damage. By the Laws of 1821, ch. 59, § 36 (Smith's Laws of Maine, Vol. 1), lawful interest could be recovered upon judgments "for debt, damages or costs" rendered and recorded by courts of record of this State, of any sister state or of the United States, as well as of any Justice of the Peace of this State in an action of debt for the unpaid amount of the judgment. By Public Laws, 1836, ch. 250, collection of lawful interest on all executions issued on judgments in civil actions from the time of rendition of judgment was authorized.

Prejudgment interest on damages given in all civil actions was severely limited at first. Lawful interest was allowable only from the time the verdict was returned to the time the judgment thereon was rendered. P.L.1823, ch. 219, § 4 (*see* R.S.1840, ch. 96, § 20). This statute was later amended to apply in cases where the damages arose from a referee's award instead of a jury verdict. *See* R.S.1857, ch. 77, § 29. The law was further amended in the case of referee awards to allow interest "from the time of the making of the referee's report" instead of "from the time of its acceptance by the court." After the enact-

ment of the 1873 amendment (P.L.1873, ch. 138), the statute read as follows:

Interest is to be allowed on verdicts and amounts reported by referees to be due, from the time of finding such verdicts or making such reports, to the time of judgments.

Subsequent revisions carried the same terminology and appeared in the 1964 revision in title 14, section 1602. It was only in 1969 that the prejudgment interest provision was enlarged to allow interest "from the date on which the complaint is filed in court," as the Legislature repealed the existing section 1602 and replaced it by the following new section 1602 (P.L.1969, ch. 397, § 1):[2]

In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days and the losing party at no time requests and obtains a continuance, interest will be assessed from the time of entry of judgment.

Section 1602 was again amended by P.L. 1977, ch. 147, and, if pertinent, would be the one applicable to the instant case; it reads in full as follows:

In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest will be suspended for the duration of the continuance. From and after the date of entry of an order for judgment, including the period of the pendency of an appeal, interest shall be allowed at the rate of 10% per year.

---

**2.** The statute was further amended by Laws of Maine, 1971, ch. 228, which added the provision: *"From and after the date of judgment*

*interest shall be allowed at the rate of 10% per year."*

### 3. *Section 1602 a procedural device*

After recognizing that at common law interest on awards of damages recoverable in civil actions was not, as such, an element of damages to be added to the basic recoverable award, this Court in *Batchelder v. Tweedie*, 294 A.2d 443 (Me.1972) viewed the 1969 amendment (the 1977 amendment would compel a similar construction) as a procedural device to control the parties' conduct of trials. It held that, under this statute, the right to interest was not absolute but was subject to enlargement or loss, depending on the diligence with which the parties conducted the litigation. This legislation, so this Court ruled, was not intended as a grant to litigants of substantive rights to prejudgment interest as a matter of damages. Section 1602, by its very language, would seem to exclude interest on unpaid alimony installments from the time they respectively became payable and due, since it provides that interest shall be assessed from the date on which the complaint is filed in court, and it is obvious that at the time the complaint for divorce was filed, there were no alimony installments due and payable. The Alimony and Support Enforcement Act, 19 M.R.S.A. § 771–776, as will be seen later, does not justify the allowance of such interest in this case.

### 4. *Date of absolute duty to pay alimony installments*

In the case of *Inhabitants of Town of Norridgewock v. Inhabitants of Town of Hebron, supra*, where reimbursement of the value of pauper supplies furnished in good faith to one Thomas E. Noyes by the Town of Norridgewock was resisted by the defendant Town of Hebron, this Court ruled that it was error to allow interest on the award of damages from the date of the writ to the date of the referee's award, holding that it could not be said that the defendant town was in default for nonpayment of the pauper supplies until the issue of Mr. Noyes' pauper settlement had been determined by the finding of the referee. "The important practical inquiry, in each case, in which interest is in question [said the Court], is, what is the date at which this legal duty to pay, as an absolute present duty, arose. This date does not always coincide with that at which the demand is legally due and suable." Here, the defendant husband litigated in good faith before the Superior Court and the Law Court the issue, whether the remarriage of his former wife terminated the right to alimony payments under the divorce decree. Under the *Town of Norridgewock* case, it would seem that the earliest date from which interest, if allowable, should be computed would be the date of this Court's decision on the issue, when the defendant husband's absolute present duty to pay was finalized. It could not be from the time each alimony installment fell due.

### 5. *Applicability vel non of Section 1602*

The question at issue is, whether section 1602 of title 14 by its use of the terminology—in all civil actions—as a result of the amendment of the statute in 1969, brought divorce proceedings within its orbit. Absent any specific legislative history supporting such an intendment, applicable rules of statutory construction dispel any such legislative purpose.

Initially it may be noted that the Legislature limited recovery of prejudgment interest in civil actions to cases involving a jury verdict or a referee's award of damages for over a century before condensation of the legislative language to "all civil actions" in 1969. Throughout all these years and since the 1969 amendment, no reported case has been discovered where anyone has claimed entitlement, or litigated the issue of the right, to interest on delayed payments of alimony or support post-judgment in divorce. Judicial notice may be taken that arrearages in support payments are not isolated matters of rare occurrence. The absence of any such claim, while not conclusive, is strong evidence against any such right and a persuasive indication that the Legislature in its use of the terminology "in all civil actions" in 14 M.R.S.A. § 1602 had no intention to bring within its

reach, and that only by implication, divorce proceedings which for obvious practical reasons had always been excluded from the statute on interest through so many years. *See Verreault v. City of Lewiston*, 150 Me. 67, 70, 104 A.2d 538, 540 (1954); *Bean and Land Co. v. Power Co.*, 133 Me. 9, 24, 173 A. 498 (1934).

It is undisputed that the plaintiff had a vested interest in the overdue alimony installments, once this Court decided that the *Bubar* rationale had no application and the wife's remarriage in this case did not terminate the husband's obligation to continue the payment of alimony. The divorce court in such circumstances had no power to order retroactive cancellation of the accumulated alimony arrearage. *Cf. Wood v. Wood*, 407 A.2d 282 (Me.1979) (child support payments). But, the plaintiff's entitlement to vested alimony installments, from the time each became due and payable, cannot be viewed, pursuant to proper procedural judicial concept, as tantamount to an existing money "judgment" in any particular amount prior to an adjudication, upon notice and hearing, respecting the exact actual amount due under the previous divorce judgment, which determination is to be made in a separate proceeding to enforce the terms of the divorce judgment with the opportunity given to the alimony debtor to set up the defense of payment or any other defense which he may be entitled to make. And, any right to interest thereon must depend as in any other case, on statutory authority.

It is evident from the historical background of the statute leading to the present section 1602 of title 14 that interest on damage awards was only allowable in civil actions at law in which, as expressly stated, a verdict had been rendered or a referee's report had been made. It would appear that the 1969 amendment which provided in pertinent part that "in all civil actions ... interest shall be assessed from the date on which the complaint is filed in court," ... was merely intended to bring the statute in line, although belatedly, with the rules of civil procedure adopted December 1, 1959 to govern the procedure in all suits of a civil nature whether cognizable as cases at law or in equity. The rules of civil procedure themselves recognize the "sui generis" nature of divorce and annulment proceedings by providing expressly that "[t]hese Rules of Civil Procedure shall apply to actions for divorce, except as otherwise provided in this rule." Rule 80(a).

Where the issue is solely whether a divorce proceeding is a civil action in the sense used in the statute regarding interest on judgments (14 M.R.S.A. § 1602) so as to allow the assessment of interest on overdue alimony installments from the date each installment became due, the absence of any specific provision to that effect in the divorce statute itself is strong evidence that the Legislature did not intend to include divorce judgments within the terms—civil actions—in the reference section. This is consistent with the rulings of this Court to the effect that, although the labels "civil suit," "civil action," "civil case," may be loosely used as referring to a divorce proceeding in contradistinction from a criminal suit, action or case, (*see Sullivan v. Sullivan*, 92 Me. 84, 42 A. 230 (1898); *Harmon v. Harmon*, 131 Me. 171, 159 A. 856 (1932)), the term "civil action" in Maine has not been perceived as including a divorce proceeding.

> While proceedings in divorce are civil in their nature as distinguished from criminal, yet they are ecclesiastical in their origin, are regulated entirely by statute, and cannot be classed as civil actions or cases.

*Preston v. Reed*, 141 Me. 386, 44 A.2d 685 (1945); *Simpson v. Simpson*, 119 Me. 14, 109 A. 254 (1920); *Lucas v. Lucas*, 3 Gray 136, 138–139 (Mass.1854).

As stated in *Harmon v. Emerson*, 425 A.2d 978, 983 (Me.1981), the power of the court to act in matters of divorce or incidental relief in relation thereto is wholly dependent for its existence upon the statute conferring jurisdiction upon the court over divorce proceedings. *See also Baril*

*v. Baril*, 354 A.2d 392, 395 (Me.1976). Our statutory law regulating divorce carries no specific provision for the award of interest on overdue alimony installments from the time said installments are payable under the divorce judgment. This Court must not travel beyond the purpose and intent of the statute. *Poulson v. Poulson*, 145 Me. 15, 20, 70 A.2d 868, 871 (1950).

It is true that in other jurisdictions some courts have construed general statutes providing interest on money judgments to apply to arrearages in alimony payments from the time they become due. But those decisions rest upon the provisions of their several statutes respecting divorce and interest awards, which are very much different from ours. Also, in some of those jurisdictions, divorce suits are proceedings in equity, thus partaking of the characteristics of civil actions, contrary to the unbroken rule in Maine that a divorce suit never was, and is not now, either a proceeding at law or in equity. *See Mitchell v. Mitchell*, 136 Me. 406, 424, 11 A.2d 898, 907–908 (1940).

The only interest recoverable on overdue alimony installments is post-judgment legal interest on money found to be due from the time of judgment on motion to enforce a decree of alimony pursuant to our Alimony and Support Enforcement Act, 19 M.R.S.A. §§ 771–776. It is to be noted that this Act, in providing several methods of enforcement of alimony and support orders, does refer to some sections of our Enforcement of Money Judgments Act, 14 M.R.S.A. §§ 3122–3137, but nowhere does it make any reference to our Interest on Judgments statute, 14 M.R.S.A. § 1602, something our Legislature would have done if it desired to incorporate that section within the Alimony and Support Enforcement Act.

Section 774 of title 19 provides that

[o]n a motion to enforce a decree of alimony, support or costs, after notice and an opportunity for hearing, the court may make a finding of money due, *render judgment for that amount,* and order:

5) Execution as provided under Title 14, chapter 509 (chapter 509 takes in sections 4651 to 5005).

Section 4655 of Title 14 states that

[o]n executions issued on judgments interest shall be collected from the time of judgment.

The time of judgment as used in this provision of the Alimony and Support Enforcement Act must necessarily refer to the time of the judgment rendered for the amount of money found due after notice and hearing on the motion to enforce the decree of alimony. It cannot refer to the time of any implied judgment automatically popping up, without notice, hearing or court decree, at the time alimony installments become overdue under the divorce judgment.

In conclusion, the Legislature should not be presumed to have modified the strict rule of the common law respecting the allowance of interest on money awards except upon clear language, which cannot be found so far as alimony and support payments in divorce are concerned. *See Palmer v. Inhabitants of Town of Sumner,* 133 Me. 337, 340, 177 A. 711, 712–13 (1935).

I would remand the case to the Superior Court with direction to delete from the judgment below the sum of $1,750.00 as interest, and to enter judgment as modified for the plaintiff.

