Raymond HALE

v.

Valerie HALE.

Supreme Judicial Court of Maine.

Argued Jan. 22, 1992.
Decided Feb. 26, 1992.

Martin Schindler, South Portland, for appellant.

C. Alan Beagle, Howard J. Feller, Beagle, Pearce, Feller & Ridge, Portland, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, and COLLINS, JJ.

COLLINS, Justice.

Raymond Hale appeals from a Superior Court (Cumberland County, *Beaudoin, J.*) order continuing his alimony obligations to Valerie Hale. Raymond maintains that the Superior Court erred in allowing certain testimony and abused its discretion when it ordered him to continue paying alimony despite his claim of a substantial change in financial circumstances. Valerie cross appeals, arguing that the Superior Court erred in modifying the divorce judgment and reducing Raymond's alimony obligations. We reject both appeals.

Raymond and Valerie Hale were divorced in 1979. Incorporated into the divorce de-

cree was a settlement agreement, outlining Raymond's child support and alimony obligations. Raymond was responsible for the medical costs incurred on behalf of the couple's two children, one of whom was a minor at the time. For the first ten years of the agreement Raymond had to pay Valerie $37,500 a year, labeled as alimony, and thereafter $10,000 a year.

In August of 1986, in response to Valerie's motion to enforce the decree, Raymond moved to modify the decree. In September of 1987, the Superior Court granted Valerie's motion to enforce, denied Raymond's motion to amend, and entered a judgment against Raymond in the amount of $92,896. Raymond satisfied the judgment. In 1988, Raymond once again moved to modify the divorce decree. In 1990, Valerie moved for enforcement and a determination of arrearage. In 1991, Superior Court modified the divorce decree by reducing past due alimony amounts,[1] but continued Raymond's obligation to pay $10,000 a year. Both parties appealed in a timely fashion.

### I.

■ Raymond argues that the court erred in allowing Valerie's counsel to characterize part of the arrearage in alimony payments as child support. He maintains that this was done in an attempt to portray him as an uncaring parent. He claims that under the settlement agreement he has no child support obligations.

Valerie argues that because Raymond was seeking to modify the divorce decree and reduce his obligations, it was necessary to determine exactly what the payments covered. She alleges that the alimony payments were inflated to compensate for her acceptance of the majority of child support expenses, including secondary educational costs.

The agreement clearly states that Raymond is responsible for the medical expenses of the couple's two children. This is obviously a form of child support. The

---

1. The order only reduced the arrearage accumulated since Raymond filed his second motion to modify the decree.

settlement agreement was the result of negotiation. Valerie agreed to pay their child's expenses if Raymond increased his alimony payments. That portion of her alimony income that was intended to offset the child care costs needed to be determined before the court could rule on Raymond's modification proposal. Furthermore, Raymond's claim of prejudice is tenuous at best. There is nothing in the record that suggests that the court was swayed by the suggestion that he had failed to make child support payments. The trial court did not abuse its discretion in allowing this line of inquiry.

## II.

Valerie contends that the Superior Court erred when it ruled that it had the power to modify the agreement. She maintains that a provision of the settlement agreement barred any modification of its terms by the court. That provision provides:

> None of the said alimony payments shall be effected by any earnings or income of Wife, Wife's remarriage or death of Husband or Wife and it is specifically agreed between the parties that none of the said payments shall be increased or decreased by any court or otherwise for any reason including subsequent events and conditions....

This provision was incorporated into the divorce decree along with the rest of the settlement agreement.

Under 19 M.R.S.A. § 721:

> The court may at any time alter, amend, or suspend a decree for alimony or specific sum when it appears that justice requires it; except that a court may not increase the alimony if the original decree prohibits an increase.
>
> This section shall not limit the Court, by full or partial agreement of the parties or otherwise, from awarding alimony which may not be increased regardless of subsequent events or conditions, or otherwise limiting or conditioning the alimony award in any manner on terms that the Court deems just.

19 M.R.S.A. § 721 (1981). Valerie argues that the last sentence of § 721 permits an agreement between parties and the court that divests the court of the authority to decrease alimony awards even where subsequent changes in circumstances would justify such action.

Both parties cite *Raymond v. Raymond*, 447 A.2d 70 (Me.1982), as support for their arguments. Valerie contends that *Raymond* supports her argument that parties to a divorce may insulate a settlement agreement from future modification. In *Raymond*, we held that, despite existing precedent that made subsequent remarriage grounds for the discontinuance of alimony, alimony payments should continue after remarriage of the payee spouse because the language and detail of the settlement agreement reflected that such had been the understanding of the parties (the settlement agreement had provided that alimony should continue for five years or until the death of the payee). However, the issue in *Raymond* was not whether the divorce court, had it deemed it just, could have discontinued the alimony payments as of the date of remarriage, but whether "remarriage require[d] that ... alimony be terminated." *Raymond*, 447 A.2d at 70. Consequently *Raymond* cannot be said to support the proposition that the parties could by agreement divest the divorce court of the power to modify the divorce decree.

In *Raymond*, we also held that the divorce court's "considered determination" that alimony continue past remarriage was "the statutory equivalent of an extraordinary circumstance ... justifying the continuance of alimony." Therefore, *Raymond* would at best support the argument that the parties' anti-modification provision should be considered an extraordinary circumstance and the divorce court should require a greater showing on the part of the payor spouse before modifying the alimony award.

The statute specifically addresses the courts' authority to increase alimony payments where prohibited by the original decree. The legislature's failure to address the courts' authority to decrease alimony payments is telling. The interpretation fa-

vored by Valerie would reduce the phrase "which may not be increased regardless of subsequent events or conditions" to mere surplusage. If a limitation or condition of alimony includes fixing the amount of alimony permanently and preventing future modification, the explicit prohibition on increasing alimony, where the parties have agreed not to, is entirely unnecessary.

■ Furthermore, when addressing the possibility of increasing an award of alimony the legislature put the words "regardless of subsequent events or conditions" after the prohibition on increases in alimony awards where barred by agreement, not at the end of the provision, following the term "otherwise limiting or conditioning the alimony award in any manner on terms that the Court deems just." Therefore, the only type of agreement between the parties that will stand despite future events is an agreement not to increase alimony. The parties may otherwise agree to limit and condition the alimony award and the court will incorporate it, if it deems the agreement just, but the statute does not provide that those limits or conditions will survive despite subsequent events.

■ The authority of the divorce court is entirely dependent upon statute. *Baker v. Baker*, 444 A.2d 982, 984 (Me.1982). The statute makes it clear that only one type of agreement will stand despite subsequent events, and, besides an agreement prohibiting future increases in alimony, no other agreement between the parties will divest the court of its power to "at any time alter, amend or suspend a decree for alimony or a specific sum when it appears that justice requires it...." 19 M.R.S.A. § 721. *See also Mitchell v. Mitchell*, 418 A.2d 1140 (Me.1980) (holding that an agreement providing that modification could only be by way of a document signed by both parties was only effective between the parties and did not divest the court of its power to modify the decree). Such an anti-modification provision should be considered by the divorce court as an extraordinary circumstance, imposing a greater evidentiary burden on the payor spouse who seeks to modify a decree than would be encountered where no such agreement exists, but does not divest the court of its statutory authority to modify the decree.

### III.

Valerie claims that the court abused its discretion when it reduced the alimony award. Raymond argues that court abused its discretion in ordering him to continue making alimony payments, and to pay part of the arrearage.

■ Where the issue is one of the appropriateness of an order modifying alimony obligations, the decision of the Superior Court is accorded great deference. *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980). "Absent a violation of some positive rule of law, this Court will overturn the trial court's decision of such a question only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Id.* This is especially true where, as in this case, neither party asked for specific findings of fact or conclusions of law. *Id.*

■ Before ruling on a motion for modification, the trial court must examine the current financial condition of both parties. *Williams v. Williams*, 444 A.2d 977, 980 (Me.1982). Section 721 provides a list of factors for the court to consider in its examination. The moving spouse must demonstrate a substantial change in either the payor spouse's ability to pay or in the payee spouse's need for support. *Id.* The trial court must consider the payor spouse's current ability to pay. *Smith*, 419 A.2d at 1039. However, the court should not premise its decision solely on the payor spouse's current income, it should consider the payor spouse's total financial resources before modifying his or her alimony obligation. *Id.*

■ Raymond maintains that he proved such a dramatic change in financial circumstances that it was an abuse of discretion for the trial court to not completely eliminate his alimony obligations, both those past due and future. The court found that he was currently unemployed but had been employed on and off since 1987, the time of

his last alimony payment and the filing of the second motion to amend. He had undergone a major surgical procedure in 1988. From 1988 to 1990, he had an average income of $70,000 and inherited $60,000. The court was clearly less than satisfied with Raymond's inability to account for the disbursement of these funds. Requiring him to pay $30,000 out of the $75,000 he owed under the divorce decree is not an abuse of discretion.

With respect to Raymond's future obligations, the court found that while he had no immediate job prospects he had begun to seek employment. Given his past earning capacity it was not an abuse of discretion for the court to continue his alimony obligations. While Raymond may have demonstrated a current lack of income there was no reason to believe that this is a permanent state of affairs.

The reduction in the amount of alimony past due was based on the failure of Raymond's business, several periods of unemployment, a major medical operation, and Valerie's inheritance of $75,000 and possession of an investment fund worth $142,000. Valerie contends that Raymond engaged in self-help measures, namely by failing to make any payments since 1987, and that he had a lavish lifestyle. The court considered Raymond's inability to account for the expenditure of a significant amount of income and his lifestyle in reaching its decision. The ordered reduction was reasonable in light of the change in circumstances as found by the court.

The entry is:

Judgment affirmed.

All concurring.