STATE OF MAINE
WALDO, SS.

DONALD L. GARBRECHT
LAW LIBRARY

SEP 7 2000

SUPERIOR COURT
Docket No. AP 00-009

FCM-WAL-9/1/2000

Doris Smart, )
            Plaintiff, )
                  )
                  )
                  )
      v.          )       **ORDER ON APPEAL**
                  )
                  )
                  )
Kenneth R. Smart , Jr., )
            Defendant. )

STATE OF MAINE
Waldo County Superior Court

SEP - 1 2000

REC'D AND FILED
Joyce M. Page, Clerk

This matter is before the Court on the appeal of a single issue remaining from the dissolved marriage of the parties. It emanates from the award to Plaintiff of an equal portion of the pension of the Defendant who is the appellant here. The actual language giving rise to the problem in the original decree (French, J.) is: "The marital portion of this pension is divided equally between the parties, including cost of living or other increases." The issue is succinctly described in the Statement filed pursuant to Rule 76F(c).

Defendant seeks to reduce the gross amount to be awarded to Plaintiff by reducing the pension because some of his time was in the reserves but more because, after his pension was fixed, a portion of it was reclassified because of a disability.[1] The facts are not in dispute and the issue was argued on the law.

The District Court, (Nivison, J.) found for the Plaintiff on both issues

---

[1] Mr. Peterson filed a proposed decree which would have prevented the issue now being raised from coming into being. The language of the proposed decree provided, inter alia: "Defendant shall not . . . waive any portion of his retirement pay to receive disability." The trial court used its own language which did not patently foreclose that possibility. Yet not using Mr. Peterson's language does not mean the issue had not been determined.

briefed. He reasoned that the difference between the 80% sought by Plaintiff and the 77% claimed by Defendant was controlled by logic. "[I]t is logical to compute the portion of the pension to which Plaintiff is entitled in a similar manner." He also found for Plaintiff on the disability issue because, he reasoned, a third party should not be able to change "the obvious intent of the Court's ruling".

Defendant relies on Austin v. Austin, 748 A.2d 996 (Me. 2000) which was decided by the Maine Law Court one week after the opinion in the Court below. It re-iterated the two part test first delineated in MacDonald v. MacDonald, 582 A.2d 976 (Me. 1990). Austin dealt with an issue different from the one in the case at bar. There, after a decree issued in which the pension instrument was not frozen on the date of the award, Husband invested the funds, as he had a right to do under the instrument in question, in a way which led to their increase. He claimed the additional funds to be his alone.

All of the Courts disagreed. Each disagreement was for a different reason but the Law Court has now spoken. Its decree mandates a look at the agreement and a threshold determination of whether or not the agreement is ambiguous. "It is clear that the original decree sought to award Valerie one half of the 401(k) account. The court, however, erred in fixing the date of valuation as the date of the decree, rather than the date of the actual division of the asset." Id, at 999.

As was the case in Austin, the order here was clear on its face but subsequent events led to questions. It awarded the Plaintiff one half of the pension account. The difference in the effective date is gleaned from the fact that in Austin there was an implied understanding that there might be changes because of the Defendant's retained power over the management of both his and Valerie's share of the account. In the instant case, the District Court (Nivison, J.) correctly reasoned that the pension could not be changed from its format as of the date of the decree, thus requiring the decree to operate on the pension as it was fixed by the date of the Court's order.

That action was possible because there was no language prohibiting that conclusion; it had not become *the law of the case*. See Raymond v.

Raymond, 480 A.2d 718, 720 (Me. 1984). Moreover, Judge Nivison made clear the "meaning of a prior decree where necessary to guide the conduct of the parties." Randlett v. Randlett, 401 A.2d 1008 (Me. 1979).

The first prong of the inquiry called for by MacDonald, supra, must be answered in the affirmative. The prior judgment was ambiguous as a matter of law.

A caveat could be claimed to arise from the words "including costs of living or other increases" but those words spoke clearly about the future. The trial court's (French, J.'s) use of those words emphasized the Court's view of the division. The date of the award was the date of the decree because it was not otherwise ordered but the Court wanted it clear that such future increases of benefits as might accrue would not be limited. By implication the present amount was fixed and could not be diminished.

Judge Nivison's reasoning is also supported by the language in ¶2: "Plaintiff shall sign any paperwork necessary to accomplish this order within thirty days after this order becomes final." ¶ 1 would have had similar language if the effective date of the order was not the date of the decree. Instead, the preparation date of the QDRO was not mentioned and no inference should have been drawn that the day it was accomplished would be the date Judge French had in mind. As stated, the QDRO would have been prepared with the date of the judgment as the effective date. Thus the language used first by Judge French and then Judge Nivison is fully consistent with Austin and supports the conclusion of the District Court.

Looking at the second question in Austin, (the second prong of MacDonald) it is equally clear that the order needed to be clarified. A review of the Nivison construction of the French judgment is " consistent with its language read as a whole and is objectively supported by the record".

Neither party disputes that the Court's finding of 80% as opposed to 77% was within the scope of the original finding by Judge French. This issue was raised after the fact and the Court (Nivison, J.) found that the order related to a stipulated chart which provided that 59 months were

non-marital out of the 299 months of service. He rejected the calculation based on 72 months out of 312 months which would have generated the 77% sought by Defendant based on reserve time. The genesis of the figures is affected by the finding of Judge French that the monthly payment was approximately $1665.00[2] of which 1/2 of the marital portion was to be paid by Defendant to Plaintiff. The $1665.00 was the entire monthly pension benefit, both marital and non-marital.

Stated otherwise, the question is whether Judge French's findings were "sufficiently ambiguous" so as to generate a need for analysis, they were, and whether Judge Nivison's findings were a "construction of [the Court's] prior judgment [which] is consistent with its language read as a whole and . . . objectively supported by the record." MacDonald, supra, at 977. As is obvious, this Court concludes they were.

There is the view that there was no ambiguity. There was no right for the Defendant to create one and no basis for any award except for 50% of the 80% of the entire pension, increased by "cost of living or other increases". Moreover there was no right for Defendant to restructure the basis of the pension so as to create the issue he has now raised. But if that were the case the matter would not now be before the Court and Plaintiff wold have received what Judge French ordered. Austin mandates no more than an explanation of the hypotheses included in the French judgment which the District Court did.

A word needs to be said about Christmas v. Christmas, 787 P.2.d 1267 (Okla 1990). Judge Nivison rejected it as being irrelevant. This Court agrees that its holding is irrelevant. The reasoning in Christmas is similar to the Law Court's opinion in Cummings v. Cummings, 540 A.2d 778 (Me. 1988) which dealt with worker's compensation. There the Law Court recognized that there might be different consequences which would attach depending on the source of the funds. In Cummings the Law Court recognized that future lost earnings were not marital property. Here, there was a restructure of the same benefit to achieve tax savings. That act did

---

2. By March 6, 2000 that figure had increased to $1747.00. The District Court did not use that figure in any relevant way. Thus the Court did not run afoul of Austin.

not create a new type of property and did not impact the Court's order which was to seek a sum fixed by the entitlement. See <u>Sanborn v. Sanborn</u>, 552 A.2d 551 (Me. Mem.Dec. 1989).

Judge Nivison's ruling was based on the third party's intervention in which Plaintiff had no part as well. It echoed the concern that Mr. Peterson's proposed decree attempted to foreclose. <u>Cummings</u> makes it clear that in order to prevail on his point, Defendant had the burden of proof in the divorce case. Otherwise the presumption of its being marital property (19-A M.R.S.A §953(3)) would dictate the result found by the Court below and by this Court. <u>Christmas</u> does not suggest that the presumption can be avoided by arranging a change in the character of the property. See <u>Lee v. Lee</u>, 595 A.2d 408 (Me. 1989).

Neither <u>Lee</u> nor <u>Cummings</u> suggests the type of property analysis called for by the Defendant relying on <u>Christmas</u>. Had the original award to be divided by the French Court been a benefit partly disability and partly pension a different result might have obtained but the percentage of the pension benefit awarded to Plaintiff might well have been different too. <u>Cummings</u> is sufficient authority to support the Nivison rejection of <u>Christmas</u>.

The entry must be: **APPEAL DENIED, case remanded to the District Court for entry of final judgment. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).**

Dated: September 1, 2000

_____
FRANCIS C. MARSANO
JUSTICE, SUPERIOR COURT